## FARMERS' NAT. BANK et al. v. HARPER. (No. 2914.)

(Court of Civil Appeals of Texas. Texarkana. April 10, 1924.)

**1. Jury ☞110(12)—Overruling objections to juror for alleged disqualification discovered after trial begun held without error.**

Where, on voir dire, juror stated he knew no reason for not being impartial and that his acquaintance with appellee was only casual, overruling of objection to his sitting on its appearing that he lived in same house with appellee *held* not cause for reversal; record showing nothing else to discredit juror's statements, and it appearing that appellants might have had juror discharged or new jury chosen.

**2. New trial ☞56—Overruling motion for alleged misconduct of juror held within court's discretion.**

Refusal of new trial, in action against bank for conversion of deposits asked on ground of misconduct of juror in stating after retirement that he believed his account with defendant had been tampered with, *held* not abuse of discretion; jurors stating it had no effect on them and that interrogatives had been substantially answered at time of remark.

**3. Banks and banking ☞154(8) — In action against bank for conversion of funds, evidence held to support finding for plaintiff except as to one item.**

In action for conversion of funds deposited in defendant bank, evidence *held* to support findings for plaintiff as to alleged wrongful charge with exception of one item.

**4. Payment ☞82(3)—Payment to bank examiner by one speculating with bank's funds on account of shortage caused thereby held not recoverable back.**

Where shortage in loans and discounts of bank was caused by speculation with bank's funds by plaintiff in co-operation with cashier and others, *held*, that payment made by plaintiff to bank examiner on account of such shortage could not be recovered back.

Appeal from District Court, Delta County; Silas Hare, Special Judge.

Action by A. S. Harper against the Farmers' National Bank and another. Judgment for plaintiff, and defendants appeal. Reformed, and as so reformed affirmed.

Appellants' statement of the case, conceded by appellee to be substantially correct, is as follows:

"This is a suit filed by A. S. Harper, a resident of Delta county, Tex., against Farmers' National Bank of Cooper, Tex., a national banking corporation, and R. M. Love, its receiver, alleging that said bank was insolvent and that R. M. Love had been appointed the receiver and was duly qualified and acting receiver of said bank.

"Plaintiff's suit was based upon an alleged conversion of his funds, which were alleged to have been deposited by him in said bank at various times during the years 1919 and 1920, and which the plaintiff alleged had not been correctly accounted for by said bank, and for the repayment of a specific sum of $5,600 alleged to have been loaned by him to the bank on May 10, 1920, as an accommodation and in order to prevent the insolvency of the bank. The acts of conversion alleged were as follows:

"(1) That on February 3, 1920, said bank without authority of the plaintiff charged a note purporting to have been executed by the Farmers' Gin & Mill Company to the account of the plaintiff, the amount of said note being $5,119.83. That at that time plaintiff had funds on deposit in said bank, and that by reason of said charge his funds to that amount were appropriated wrongfully and had not been refunded to him.

"(2) That on September 25, 1919, plaintiff had on deposit with said bank more than the sum of $1,000, and at that time the bank charged against his account a note which was ostensibly executed by Mrs. Dora Lindley to the bank, but which was in fact a forgery in the principal sum of $1,000, and thereby appropriated said funds to its use and benefit.

"(3) That during the fall of 1919 he had in his private box in said bank war savings stamps to the amount of $1,000 at maturity, but that without his knowledge and consent said bank converted said war savings stamps to its own use and benefit, or permitted its cashier to do so, and thereby the value of said war savings stamps, being the sum of $850, was appropriated by said bank.

"(4) That in the year 1919 plaintiff had on deposit with said bank Liberty bonds to the amount of $1,450. That said bonds to the extent of $500 were converted by said bank and appropriated to the payment of a note alleged to have been owing by the plaintiff's son, and that thereby he was damaged in the said sum of $500.

"(5) That the plaintiff had in his private box in said bank a note for the sum of $88 against a man named Chance, and that said note was wrongfully taken out of his box by the bank and charged against his account, and that thereby funds belonging to plaintiff in that amount were appropriated by said bank.

"(6) That on or about May 8, 1920, the firm of Fenner & Beane of New Orleans, La., was indebted to the plaintiff in the sum of $2,750.78. That they transferred said funds to the Security National Bank of Dallas, Tex., for the credit of Farmers' National Bank, but that the said Farmers' National Bank did not credit him with said funds, but wrongfully appropriated the same.

"(7) That in the fall and winter of 1919 and in the early months of 1920 the cashier of Farmers' National Bank speculated in cotton upon the New Orleans Cotton Exchange, and in doing so appropriated and used funds belonging to the plaintiff in the sum of $23,261.80,

which were transferred from his account to cover the losses of said cashier, and that thereby the plaintiff was damaged in the sum of $23,261.80.

"(8) That on or about March 30, 1920, plaintiff's account with said bank was charged with a draft in the sum of $2,000 drawn by Donald McGinnis & Co. of New Orleans, La., to cover an amount owing by J. P. Green. That said draft was not an obligation of the plaintiff, and that thereby his funds were misappropriated by said bank.

"(9) That there was on the books of said bank appearing to the credit of Harper, Stell & Culp an account credited with the sum of $629. That said funds as a matter of fact were the property of the plaintiff, and that the defendant had refused to pay them to him, and thereby he had been damaged.

"The defendants' answer to these allegations was that they did not owe the plaintiff any sum; that said bank was insolvent and had been forced to close its doors on or about May 1, 1920; that at that time there was discovered a shortage in the funds of said bank, which shortage was alleged to have resulted from the illegal speculations of L. E. Stell, cashier of said bank, and other parties among whom was A. S. Harper; that by reason of this shortage said bank was insolvent; and that the said A. S. Harper, together with other parties, admitted in writing their responsibility for said shortage up to the sum of $50,000 and obligated themselves to make good such loss. That in pursuance of this admission the plaintiff paid to said bank on or about May 10, 1920, the sum of $5,600 as a part of his obligation to make good such pledge to restore such shortage. That in addition thereto it was denied that the funds of the plaintiff had been appropriated in any of the amounts claimed and that no liability had been incurred by reason of the charges made by the plaintiff. The defendants further specially denied all of the alleged misappropriations and denied that the plaintiff had funds on deposit at the various times stated. The defendants further alleged that the said Harper and other parties were jointly operating in the alleged illegal speculations and that by reason thereof Harper should not recover any amounts which grew out of defalcations or misappropriations by the said L. E. Stell in such transactions. The defendants further alleged that the proceeds of the war savings stamps, Liberty bonds, and the Harper-Stell & Culp account were applied against valid indebtedness of the plaintiff owing to the Farmers' National Bank, and by way of cross-action the plaintiff sought to recover certain funds which were alleged to be owing to said bank by reason of advancements made by said bank of funds for the credit of the plaintiff which had not been refunded. The plaintiff denied the charges made by the defendants and pleaded specifically to the cross-action of the defendants, denying any indebtedness, and seeking recovery as in his original petition.

"Upon a trial of the case before the court and a jury, special issues were submitted to the jury, and after answer by the jury a judgment was rendered in favor of the plaintiff for the sum of $10,103.35, which judgment was based upon answers returned by the jury in favor of the plaintiff upon the following items: The

note for $5,119.83, the Dora Lindley $1,000 note, war savings stamps of $866, Liberty bonds $400, Chance note $88, Donald McGinnis draft $2,000, the Harper-Stell & Culp balance $629; and a recovery was denied on the other items making up plaintiff's demand, and also a judgment was denied the defendants upon all of the counts in their cross-action."

Love & Rutledge and W. M. Taylor, all of Dallas, and L. L. James, of Cooper, for appellants.

Clark & Sweeton, of Greenville, C. A. Rasberry, of Dallas, and C. C. McKinney, of Cooper, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] On his voir dire the juror Anderson testified, in reply to questions propounded to him by appellants, that his acquaintance with appellee was only a casual one, and that he "knew no reason why he would not make a fair and impartial juror in the case." At the time he so testified, Anderson was living in the same house appellee lived in. Ignorant of the fact, appellants accepted him as a juror. They were informed about it on the day after the trial began, and then objected to Anderson's sitting in the case, "whereupon," it is stated in the bill of exceptions, "plaintiff's counsel made a proposition to defendants' counsel that they would be willing for the court to excuse the juror referred and proceed with the trial of the case with the remaining eleven jurors," and suggested that "the case be either withdrawn from the jury and continued, or that a new jury be selected and a new trial begun, or that the case be proceeded as it is now." The court indicated that he would approve either course suggested, if agreed upon by the parties, and if neither course was agreed upon he would "proceed with the trial with the jury as constituted." Afterward, the parties having failed to agree on either of the suggested courses, the court overruled appellants' objection, "and," the bill recites, "proceeded with the trial of the cause before the jury, including the said Anderson." Appellants insist the action of the court was error which entitled them to a reversal of the judgment. We do not think so. How long the juror had been living in the house appellee lived in, and the circumstances under which he lived there, was not shown, and there is nothing in the record except the bare fact that they lived in the same house at the time of the trial tending, if that does, to discredit the juror's statement that his acquaintance with appellee was a casual one only and that there was no reason why he should not make a fair and impartial juror. The bill indicates that appellants might have had the juror discharged or a new jury chosen and then have proceeded with the trial had they wished to do so. As they might and did not,

we do not think they should be heard to complain as they do.

[2] Not only was the testimony undisputed that wrongful charges, and credits as well, were made in appellee's account on the books of the bank, but it was also undisputed that the accounts of other patrons of the bank also were tampered with and falsified. It appears from a bill of exceptions in the record that after the jury · retired to consider the case, one of them, a man named Black, stated that he had an account with the bank at the time it failed and expressed a belief that it had been tampered with and that he had more money on deposit in the bank than his account showed he had. This conduct of the juror was one of the grounds of appellants' motion for a new trial, and they complain because the court refused to sustain their motion on that ground. Four of the jurymen testified about the matter at the hearing of the motion. Three of the four said they heard Black make the statement, and each of them said it had no effect on him. One of them testified that they "had substantially answered all the · questions" the court propounded to them at the time Black made the statement. The other one of the four testified he never heard Black make the statement or any like it. On the showing made, we do not think it appears that the court abused the discretion he possessed when he refused to sustain the motion on the ground stated.

[3] The judgment was for the aggregate of several sums found in appellee's favor as shown in the statement above. Appellants insist that the testimony did not warrant the findings as to any of the sums. We think it did as to all of them except the one that the note for · $5,119.83, dated February 3, 1920, due in 60 days, purporting to have been made by the Farmers' Gin & Mill Company, was charged to appellee's account with the bank. As we understand it, all the testimony was to the contrary of that finding, except only that of appellee as a witness that the charge against him appeared in a statement of his account furnished him by appellants, which, he said, he had in his possession at a former trial of the case but which was afterwards lost. The charge did not appear in the statement of appellee's account to May 10, 1920, used at the trial, which the parties seem to have treated as a correct copy of that account as it appeared on the books of the bank, and which showed a balance at that date of $56.59 in appellee's favor. But that statement did show a charge of $4,719.-83 against appellee April 15, 1920, and he argues that—

"The charge is so similar to the amount of the note that it is doubtless an error, and it evidently represents a charge of the note to Harper's account twelve days after the maturity thereof."

We do not think so. On the contrary, we think the jury did not have a right to infer that the $4,719.83 charge in the account was intended to cover the $5,119.83 note. The reasonable inference from the similarity in the amount of the note and the amount of the charge in the account, it seems to us, is that appellee had the amounts confused when he testified, and that the charge in the lost statement of his account was $4,719, instead of $5,119.83, as he remembered it. In that view it can fairly be said, and we think should be said, that it sufficiently appeared that appellee did not discharge the burden resting upon him to show that his account was charged with the $5,119.83 note, and that the trial court should have instructed the jury to find in appellants' favor on that issue.

As to the other charges alleged to have been wrongfully made on appellee's account, both the witnesses Stell and Chesnutt testified that the amount of the Dora Lindley note for $1,000 was so charged, and there was an entry dated February 26, 1919, in the statement of appellee's account attached to the statement of facts, before referred to, which we think the jury had a right to say represented the charge; and it appeared without dispute in the testimony that on April 16, 1920, appellee's account was charged with $88 on account of the Chance note, and on February 24, 1920, with $2,000 on account of the Donald McGinnis & Co. draft.

The testimony that appellee owned the $629 to the credit of "Harper, Stell & Culp" on the books of the bank also was undisputed.

The other sums found in appellee's favor and covered by the judgment were $866 on account war savings stamps · and $400 on account Liberty bonds, which appellee claimed he had in a box used by him in the bank. He charged that the stamps and bonds were taken out of the box by the bank or its employees and converted to the use of the bank. We are not prepared to say that the testimony did not support the charge.

[4] In May, 1920, examiners found a shortage of about $50,000 in the bank. With reference to this shortage appellee and others whose names were signed to it executed an instrument as follows:

"May 7th, 1920.

"In regard to the examination of the Farmers' National Bank of Cooper, Texas, May 6th, 1920, by Nat'l Bank Examiner Fred S. Mansfield assisted by A. B. McCans, a shortage of approximately $50,000.00 was found in the loans and discounts.

"The shortage was caused by the undersigned and other parties at present unknown to the examiners, who tried to make up losses by playing the future cotton board after a loss and materialized in spot cotton.

"We had put up some money from time to time, and frankly had not settled with the bank

or the cotton brokers, and were trying our very best to get out of the trades on the board, and check up and settle with the bank, in view of the alleged shortage, we the undersigned hereby pledge our entire worth towards making up this loss to the extent of $50,000.00 by the 7th of May, 1920.

"It is hereby positively stated by L. E. Stell, cashier of the Farmers' National Bank, that the boys trading, really did not know just to what extent he was remargining, and in what way, and he assumes this responsibility of making the entries to take care of the situation, and Mr. Stell further guarantees that he will·deed his home within ten days to take care of the difference, after each man has been asked to do his part.

"[Signed]        L. E. Stell
       "J. T. Rountree
       "J. B. Green
       "J. A. Harrison
       "A. S. Harper
       "C. L. Anderson
         "by C. Anderson."

Appellee afterward, on May 12, 1920, paid the bank examiner $5,565.57 on account of the shortage. He sought to recover back the amount in this suit, and in a cross-assignment complains because the court refused to award him same. The cross-assignment is overruled. We think the action of the court was correct.

The judgment will be so reformed as to deny appellee a recovery of the $5,119.83 item, and as to award him a recovery of $4,983.52, instead of $10,103.35, and as so reformed it will be affirmed.