**Todd GANT, Appellant,**

v.

**DUMAS GLASS AND MIRROR, INC.
and Bobby Dee Banks, Appellees.**

No. 07–96–0063–CV.

Court of Appeals of Texas,
Amarillo.

Dec. 2, 1996.

Rehearing Overruled Jan. 6, 1997.

Garner Lovell & Stein, P.C., Joe L. Lovell, Tim D. Newsom, Amarillo, for appellant.

Fulbright & Jaworski L.L.P., Ben Taylor, Dallas, for appellees.

Before BOYD, C.J., REAVIS, J., and REYNOLDS, Senior Justice.*

REYNOLDS, Senior Justice (Retired).

Todd Gant, being dissatisfied with the recovery secured from Bobby Dee Banks for his personal injuries in his automobile-collision negligence action against Dumas Glass and Mirror, Inc. (Dumas Glass) and its employee, Banks, has pursued this appeal with seven points of error. He contends there was error in the jury selection, the jury's ultimate award of damages, and in the trial court's instructing a verdict for Dumas Glass, as well as in rendering judgment for Dumas Glass notwithstanding the jury finding that Banks was in the course and scope of his employment at the time of the collision. Concluding that reversal is not warranted by Gant's points-of-error contentions, we will affirm.

The underlying action arose when a pickup truck owned by Dumas Glass and driven by Banks collided with the rear end of an intersection-stopped automobile, which was oper-

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

ated by Gant and owned by his mother. By his live pleadings, Gant alleged that Banks was negligent in causing the collision, and was in the course and scope of his employment with Dumas Glass at the time of the collision. Pleading that the collision caused severe injuries to his back, Gant sought past and future damages for physical pain, mental anguish, medical expenses, lost wages, and diminished physical capacity from Dumas Glass and Banks, who generally denied Gant's allegations.

During the trial before a jury, the trial court granted the motion of Dumas Glass for an instructed verdict, but still submitted to the jury the question whether Banks was acting in the course and scope of his employment at the time of the collision. The jury found that Banks's negligence was the proximate cause of the collision and that, at the time, he was acting in the course and scope of his employment.

The jury made the following awards for Gant's damages:

| | |
|---|---|
| Medical care in the past: | $34,908.92 |
| Medical care in the future: | $ 500.00 |
| Loss of earning capacity in the past: | $ 4,250.00 |
| Loss of earning capacity in the future: | $ 0 |
| Physical pain in the past: | $ 3,900.00 |
| Physical pain in the future: | $ 2,000.00 |
| Mental anguish in the past: | $ 0 |
| Mental anguish in the future: | $ 0 |
| Physical impairment in the past: | $ 3,900.00 |
| Physical impairment in the future: | $25,740.00 |

The trial court accepted the verdict, granted the motion of Dumas Glass for judgment notwithstanding the jury's finding that Banks was acting in the course and scope of his employment, and rendered judgment decreeing Gant's recovery of damages from Banks in the sum of $75,198.92 for actual damages, pre-judgment interest thereon in the amount of $12,958.29, and post-judgment interest at a rate of 10% per annum and costs.[1] By its

judgment, the court also decreed that two intervenors, St. Anthony's Hospital and High Plains Baptist Hospital, respectively recover the stipulated sums of $13,645.10 and $1,207.95 from Gant, who has not challenged the awards, and the hospitals are not parties to this appeal.

Initially, Gant charges the trial court with error in failing to grant his challenges for cause against veniremembers Hood, Bullington and Childers, whom he perceived to express bias or prejudice against awarding damages for mental anguish, and who, after his peremptory challenges were exhausted, served as jurors.[2] Additionally, Gant charges the court erred in failing to grant his challenge for cause against veniremember Saenz who, being unsuccessfully challenged because of his friendly relationship with Banks, also served as a juror. We will address the two grounds for challenges separately.

The premise for Gant's complaint against the denial of his challenges to the three jurors whom he contends were biased or prejudiced against awarding damages for mental anguish is found in the voir dire examination of the venire by Gant's counsel. The inquiries of counsel, following his mention of various damages, and the responses elicited, are recorded as follows:

[Counsel]: How about mental anguish? Is that too far afield for anybody?

[Veniremember] HOOD: Too close.

[Counsel]: How close? Just tell me why you say that.

HOOD: I am not real sure. I guess thinking about myself, if I were in that same situation. I think we all face problems and all kinds of things. Whether we should be paid for that, I just don't feel like we should. I think that is part of living.

[Counsel]: Could you give an award of mental anguish damages at all?

---

1. Although Gant recites that the amount of the judgment awarded was $90,157.21, the record reflects that a check in the sum of $90,776.25 for the amount of the judgment and post-judgment interest calculated through December 29, 1995 was tendered to Gant and his counsel in satisfaction of the judgment.

2. Gant also challenged eleven other members of the venire, none of whom served on the jury, for bias or prejudice against awarding damages for mental anguish.

HOOD: I might have a problem with that.

[Counsel]: When you say—What kind of problem? I am trying to understand.

HOOD: Well, maybe I am trying to understand myself. It would have to be something that was clear-cut, black and white, in my estimation, before I did.

[Counsel]: I see you nodding your head kind of back there Darlene [Bullington].

[Veniremember] BULLINGTON: I have a problem with that.

[Counsel]: With mental anguish?

BULLINGTON: Yeah. You can get over anything if you want to.

[Counsel]: Could you award any mental anguish damages?

BULLINGTON: It would be hard. We all have mental anguish at times.

[Counsel]: What would it take—Just in your opinion what would be a situation that you could award mental anguish damages?

BULLINGTON: I can't think of any.

[Counsel]: Can you think of any situation where you could?

BULLINGTON: I just think you could get over anything if you want to.

Counsel then moved to questioning other veniremembers and, when he reached veniremember West, the following exchange occurred:

WEST: I would like to know what your definition of mental anguish is.

[Counsel]: The Court, at the end of the case, would give a definition. And you just asked me one of those questions lawyers just hate, because you put me on the spot, and I can't give you a precise legal definition without going and looking real quick. Or it might take me a little more than real quick.

WEST: Does it mean that you are mad mentally over problems that you have, or am I wrong?

[Counsel]: I believe—and this kind of touches on something that Mr. Clower just said—

WEST: Or is it some mental problems you developed through your physical suffering?

[Counsel]: I believe that what the jury will find what the definition is, is pretty broad without much scale. And there are—Just being mad alone, I don't believe under the definition is enough. Just being upset alone is not enough. It has to be more than that. Beyond that there is no scale.

Given that—and I have got to work my way through—do you feel under a relatively vague definition like that that you could award mental anguish damages under any circumstance?

WEST: Well, if you have just—If it is being mad mentally, just because this has happened to you, you have got this problem, I think a person should be able to go on and get through it. But if you have developed mental problems because of it, it is a different thing.

No other definition of mental anguish was provided to the venire.

Continuing his examination, counsel engaged in the following dialogue with veniremember Childers:

[Counsel]: Ms. Childers, I haven't picked on you yet. Could you award mental anguish damages?

CHILDERS: I don't believe I could.

After Gant's counsel finished his voir dire examination, counsel for the hospitals also questioned the veniremembers on the subject of mental anguish, during which these excerpts are recorded:

[Hospitals' Counsel]: But what I am asking about is, based on the evidence here—not outside this room, but here—and based on the Court's instructions to consider mental anguish, some of you won't.

\* \* \* \* \* \*

[Counsel]: Ms. Bullington, you won't, will you?

BULLINGTON: If I hear all of it.

[Counsel]: You might?

BULLINGTON: I might.

\* \* \* \* \* \*

[Counsel]: Sergeant Hood, be honest with me. Mental anguish, would you even

consider it under the scenario I have laid out?

HOOD: Yes, I would consider it. I said earlier I would have a real problem.

[Counsel]: You would have a real problem, but you would consider it.

Anybody that would just not consider it?

(No audible response.)

Based on this exchange, Gant charges the court erred in overruling his challenges because the bias or prejudice evinced itself in the jury's award of zero dollars for past and future mental anguish.

■ Section 62.105 of the Texas Government Code Annotated (Vernon Supp.1997) specifies the grounds for disqualification of a person from serving as juror as a matter of law. As material to Gant's challenges, subsection (4) provides for disqualification of a person who has a "bias or prejudice in favor of or against a party in the case," and has been held to include bias or prejudice against the subject matter of the litigation. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex. 1963). But, when a juror is not found biased or prejudiced as a matter of law, the question whether the juror is nevertheless sufficiently biased or prejudiced to merit disqualification is a factual determination to be made by the trial court. *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963).

■ The trial court's overruling a challenge for cause carries with it an implied finding that bias or prejudice does not exist such that it constitutes disqualification. Thus, whenever the evidence does not conclusively establish the panelist's disqualification as a matter of law, we must consider all the evidence in the light most favorable to upholding the trial court's ruling, *Bullard v. Universal Underwriters Insurance Co.*, 609 S.W.2d 621, 624 (Tex.Civ.App.—Amarillo 1980, no writ), and we will not disturb the finding in the absence of an abuse of discretion. *Sullemon v. U.S. Fidelity & Guar. Co.*, 734 S.W.2d 10, 15 (Tex.App.—Dallas 1987, no writ).

■ To a greater or lesser extent, bias and prejudice form a trait common in all persons; however, to fall within the disqualifying provision of section 62.105, *supra*, cer-

tain degrees thereof must exist. *Compton v. Henrie*, 364 S.W.2d at 181–82. The usual meaning of "bias" is an inclination toward one side of an issue rather than the other; but, as used in relation to disqualification of a prospective juror, it must appear that the state of mind of the panelist leads to the natural inference that he or she will not or did not act with impartiality. *Id.* at 182. Prejudice is more easily defined, for it means prejudgment, and consequently embraces bias; yet, the converse is not true. The establishment of such a state of mind would disqualify a panelist from serving on a jury as a matter of law. *Id.*

In relation to awarding damages for mental anguish, the jury was specifically instructed:

> [T]o recover from mental anguish, it must be shown that Todd Gant suffered such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. You are further instructed that mental anguish is something more than mere worry, anxiety, vexation, or anger. It is more than disappointment, resentment, or embarrassment. .

Dwarfed by this legal definition, Gant's counsel's admittedly vague, and legally incorrect, definition, given upon the request of veniremember West, cannot be the standard by which the answers of the challenged jurors regarding damages for mental anguish are measured.

Nevertheless, Gant contends that Hood, when first asked about awarding damages for mental anguish, was disqualified as a matter of law by his response that "Whether we should be paid for that, I just don't feel like we should," and once disqualified, could not, under *W.D.A. v. State*, 835 S.W.2d 227, 229 (Tex.App.—Waco 1992, no writ), be rehabilitated. Moreover, Gant, albeit candidly, and correctly, conceding the respective responses of Hood, Bullington, and Childers to the inquiry of awarding damages for mental anguish that "I might have a problem with that," that "I have a problem with that," and that "I don't believe I could," only invoked factual determinations by the trial court as to

their disqualification, *see Glenn v. Abrams/ Williams Bros.*, 836 S.W.2d 779, 783 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Sullemon v. U.S. Fidelity & Guar. Co.*, 734 S.W.2d at 15, urges that upon a consideration of the voir dire examination regarding mental anguish, the court abused its discretion in not disqualifying these three veniremembers.

█ Neither bias nor prejudice is presumed. Nor is either shown by general questions, which are usually insufficient to satisfy the diligence required in probing the mind of a veniremember with respect to a legal disqualification for bias or prejudice. *Roy L. Jones Truck Line v. Johnson*, 225 S.W.2d 888, 896 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.). As gleaned from the reported decisions, the key response that supports a successful challenge for cause is that the veniremember cannot be fair and impartial, because the veniremember's feelings are so strong in favor of or against a party or against the subject matter of the litigation that the veniremember's verdict will be based upon those feelings and not on the evidence. Julie A. Wright, *Challenges for Cause due to Bias or Prejudice: The Blind Leading the Blind Down the Road of Disqualification*, 46 Baylor L.Rev. 825, 838 (1994).

█ Considering the challenged jurors' answers to the general inquiries, particularly in light of counsel's legally incorrect definition of mental anguish, we cannot fault the trial court, better positioned to observe each juror's decorum and manner in responding during the voir dire examination, for deeming that their answers did not establish they were disqualified as a matter of law for bias or prejudice. Nor do we consider that the trial court abused its discretion in not disqualifying the jurors. None of the challenged jurors gave the key response that his or her verdict on mental anguish would be based on his or her feelings and not on the evidence. At most, the jurors' answers showed them to be only against awarding damages for general worry, not against awarding damages for severe grief, disappointment, indignation, wounded pride, shame, despair, or public humiliation, and

nothing in the record shows their inability to follow the court's instruction to consider mental anguish.

█ In regard to his challenge against Saenz, Gant represents that Saenz stated he was a friend of, and formerly had a business relationship with, Banks, which disqualified Saenz as a juror under the holding in *Texas Cent. R. Co. v. Blanton*, 36 Tex.Civ.App. 307, 81 S.W. 537, 538 (1904, no writ). The *Blanton* scenario was that the trial court overruled a challenge for cause to juror Adams, who stated he was a friend of the plaintiff, Blanton, an attorney who successfully represented him in an important land suit by which he received several thousand dollars, and he felt so kindly toward plaintiff and was so grateful for plaintiff's services that he named one of his children in plaintiff's honor, and he still had that feeling toward plaintiff. The appellate court, characterizing juror Adams as "a warm, grateful friend," held the trial court erred in overruling the challenge for cause. *Id.* But that relationship is not the Saenz–Banks relationship depicted in this record.

This record reflects the state of the relationship by the following exchange between Gant's counsel and veniremember Saenz:

[Counsel]: Mr. Saenz, how is it you know Bobby Banks?

[Saenz]: I rented a house from him about eight years ago.

\* \* \* \* \* \*

[Counsel]: How long did you rent the house?

[Saenz]: A little over a year, probably.

[Counsel]: How would you describe your relationship with Bobby?

[Saenz]: We became friends. I just—I wave and sometimes talk to him on the street or at the shop. Just little things like that. Nothing really major. Just friends.

[Counsel]: Do you see him much anymore?

[Saenz]: No. Just occasionally, like on the street or at stores.

[Counsel]: How would you feel about sitting as a juror in judgment of Bobby Banks in this case?

[Saenz]: I think I could be fair to both parties.

The trial court, having the opportunity of observing Saenz in his voir dire examination, was in a better position than we to evaluate his sincerity and capacity for fairness and impartiality, *Swap Shop v. Fortune,* 365 S.W.2d at 154, and obviously found nothing in his statements about his friendship with Banks to indicate that he would not act with impartiality.

In considering the evidence in the light most favorable to upholding the court's ruling, as we must, we deem that Saenz's statements of his friendship with Banks do not establish a state of mind that would disqualify him as a matter of law. *Compton v. Henrie,* 364 S.W.2d at 182. And, considering Saenz's representation that the friendship was a casual one only which would not affect his returning a fair verdict, we cannot say the trial court abused its discretion in denying Gant's challenge. *Farmers' Nat. Bank v. Harper,* 261 S.W. 160, 161 (Tex.Civ.App.—Texarkana 1924, no writ). Gant's first point of error is overruled in its entirety.

Next, Gant presents his respective second- and third-point contentions that the jury's answer of zero damages for past and future mental anguish is against the great weight and preponderance of the evidence and, resultantly, the trial court abused its discretion in allowing his first amended motion for new trial to be overruled by operation of law. In this regard, the meaning of the jury's answer of zero damages is that the jury was not convinced by a preponderance of the evidence that Gant carried his burden of proof to establish that he suffered mental anguish as the result of the accident. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966).

The failure of the jury to find damages for mental anguish is reviewable in the same manner as a jury's finding of damages is reviewed. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 647 (Tex.1988). When the failure of the jury to find the fact inquired about is challenged as being against the great weight and preponderance of the evidence, *Cropper* teaches that, as noted in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), all of the evidence must be considered and weighed to determine whether the failure to find is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d at 651.

 Consistent with the definition the court furnished the jury, the term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and public humiliation. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). This definition requires the jury to distinguish between disappointment and severe disappointment, between embarrassment and wounded pride, between anger and indignation. *Id.*

 Gant gave testimony on the issue of mental anguish, and if he evinced symptoms of mental anguish, his evidence, if not refuted, cannot be disregarded; however, if his evinced symptoms are subjective in nature, which may not be readily disputed, the jury's failure to find damages from his testimony alone will not be disturbed. *Dupree v. Blackmon,* 481 S.W.2d 216, 221 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.) (Keith, J., concurring). *Accord Hammond v. Rimmer's Estate,* 643 S.W.2d 222, 223–24 (Tex.App.—Eastland 1982, writ ref'd n.r.e.). During his testimony, Gant stated that he cried in front of a nurse because he was unable to work and, responsive to the direct examination of his counsel on the subject of mental anguish, gave these details:

Q. This jury—particularly this jury—is familiar with the concept of damages for pain and suffering and mental anguish. I want to ask you about mental anguish, all right. Do you think you have suffered mental anguish?

A. Yes.

Q. Let me make sure we are on the same page now. When I talk about mental anguish, I am talking about something more than worry, anxiety, vexation or anger. Okay? Such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation. All right? Have you suffered any of those things?

A. Yes.

Q. Have you suffered any disappointment as a result of this injury?

[Objection that counsel was leading his client was overruled]

A. Yes. Disappointment, yes.

Q. Severe disappointment?

A. I would say.

Q. Tell the jury why you say that.

A. Your kids want to go on like—I am not too far from Kansas City, World of Fun. You don't have the money to do it. You have got to tell them, "No," and explain why. I can't afford it. I should be able to; but, I can't.

You go to, like I said, garage sales and buy their clothes. I pick out the nicest, take them home, and mix a little bleach with my detergent and make them look like they are clean. They shouldn't have to go through that. It bothers me that they have to go through that.

Q. Todd, have you suffered any shame, despair, or public humiliation as a result of your back injury?

A. Yes.

Q. Tell the jury. Give them a few examples.

A. I feel I have been prejudiced in my life seeing a person at a grocery store with food stamps. That is the most embarrassing—I don't even buy them in my own town. I drive ten miles away to get them, because I am so ashamed to do it.

I have never been on any assistance in my life, except for that, for right now, because I can't work. I have never been on anything until—until now.

Whether these conditions will continue in the future is not disclosed by the evidence.

As the testimony reveals, Gant affirmed the posed legal conclusion that he was afflicted with the elements constituting mental anguish; yet, when asked for examples of those elements, his descriptions of his emotions revealed only worry, anxiety, shame and embarrassment. Although Gant's emotions were real and understandable, they did not rise to the level of establishing, aside from his physical injuries, the substantial disruption in his daily routine, or the high degree of mental pain and distress necessary for compensable mental anguish. *Parkway Co. v. Woodruff*, 901 S.W.2d at 444. Thus, the jury could only speculate about the existence of compensable mental anguish, *id.*, and their answer of zero to the damage issue, obviously founded on the determination that Gant's emotions did not rise to the level of compensable mental anguish, cannot be said to be against the great weight and preponderance of the evidence.

Consequently, Gant's second point of error is overruled. This decision pretermits an address of his third point of error based upon the sustainment of the second-point contention of error. Tex.R.App. P. 90(a).

Gant utilizes his fourth and fifth points of error to respectively contend that the jury's award of $500 for future medical expenses was against the great weight and preponderance of the evidence, and the court erred in allowing his motion for new trial upon that ground to be overruled by operation of law. In so contending, he relies solely upon the testimony of Wayne S. Paullus, Jr., M.D., and characterizes his testimony as establishing "the benchmark for future medical care at a $38,000 minimum."

Dr. Paullus's testimony concerning future medical care, cited by and relied upon by Gant in support of his appellate contention, was as follows:

Q. If further stabilization was required, Doctor, by you in the next two or three years, would it be a similar type procedure—

A. No.

Q. —to what you've previously done?

A. No.

\* \* \* \* \* \*

Q. Your medical expenses thus far on what you have done total about sixteen—I think it's $16,000. Would the cost of the new procedure that you're talking about, if you did it, be more or less or about the same?

A. Probably be more. It's more extensive.

Q. Give me an estimate of what it would cost.

A. I have—I would have to refer to my—you know, the coding persons. It's probably, with the—They usually do that with an orthopedic surgeon, so, I mean, it would require an addition of—gosh, use coral, internal fixation, which is much more sophisticated than facet screws. It's probably going to be in the range of $20,000, $25,000, I suspect.

\* \* \* \* \* \*

Q. Okay. Doctor, would you tell us— See if I understand correctly. In summary, you've told us that whatever condition he's in now is probably as good as he's going to get?

A. Without further things being done, that's correct.

Q. Right. And if he has to have any further procedure, you would have to do some tests to ascertain if he needed to do that?

A. That's correct.

Q. At this particular point, you don't— you don't see that necessity?

A. No.

Based upon the doctor's testimony of no present necessity for the procedures upon which Gant bases his "$38,000 minimum," we are unable to say, after considering and weighing all of the evidence, that the award of $500 is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Gant's fourth point of error is overruled. The overruling pretermits a discussion of his fifth point of error predicated upon the error unsuccessfully contended for in the fourth point. Tex.R.App. P. 90(a).

Gant's sixth-point-of-error contention is that the trial court erred in granting an instructed verdict in favor of Dumas Glass on the issue of whether Banks was in the course and scope of his employment at the time of the collision. This contention is moot, as Gant concedes, because despite the instructed verdict, the issue was submitted to and answered by the jury. Therefore, the sixth point of error is overruled.

Given the opportunity, the jury found Banks was in the course and scope of his employment with Dumas Glass at the time of the collision. In submitting the question, the court instructed the jury, without objection, that:

> An employee is acting in the scope of his employment if he is acting in the furtherance of the business of his employer.

> An employee is not acting in the scope of his employment if he departs from the furtherance of the employer's business for a purpose of his own not connected with his employment and has not returned to the place of departure or to a place he is required to be in the performance of his duties.

Receiving the verdict, the court, upon the motion of Dumas Glass, rendered a judgment notwithstanding the verdict for Dumas Glass on the ground that there was no evidence to support that finding, the predicate for Gant's seventh point of error.

To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict, it must be determined that there was no evidence upon which the jury could have made the finding. In acting on the motion, all testimony must be considered in a light most favorable to Gant, and every reasonable intendment deducible from the evidence will be indulged in his favor. *Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726, 728 (Tex.1982).

The burden of presenting evidence to raise the issue was Gant's and, in order to support the jury's finding, evidence must have been presented that Banks was acting in behalf of Dumas Glass at the time of the collision. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 358 (Tex.1971). The evidence reveals that Banks was provided with a Dumas Glass truck, to be used by Banks

only in his daily work for Dumas Glass. Although Banks was not allowed to take the truck home at night nor to use it for his personal business, he was permitted to drive the truck to his home for lunch. Prior to the accident, Banks had driven the truck home for lunch and, in his words, "was going back to the shop" when the accident occurred.

Gant acknowledges that for Dumas Glass to be liable for Banks's negligent acts, it must have been satisfactorily shown that Bank's acts were within the scope of his general authority, in furtherance of Dumas Glass's business, and for the accomplishment of the object for which Banks was employed. *Id.* at 357; *Kulms v. Jenkins,* 557 S.W.2d 149, 152 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). The evidence that Dumas Glass employed Banks and furnished for use in his employment the truck involved in the collision gave rise to the presumption that Banks was acting within the course and scope of his employment when the collision occurred; yet, the presumption vanished when Banks testified that at the time he was returning from attending his personal business of eating lunch en route to work, *Kulms v. Jenkins,* 557 S.W.2d at 152, *Hudiburgh v. Palvic,* 274 S.W.2d 94, 98–99 (Tex.Civ.App.—Beaumont 1954, writ ref'd n.r.e.), and the rebutted presumption could not then be treated as evidence by the jury in reaching its verdict. *Empire Gas & Fuel Co. v. Muegge,* 135 Tex. 520, 143 S.W.2d 763, 768 (1940). Consequently, if Dumas Glass was to be held liable, Gant had the burden of producing other evidence that Banks was acting within the course and scope of his employment. *Kulms v. Jenkins,* 557 S.W.2d at 152.

Recognizing the presumption and its rebuttal, Gant submits that other evidence established the elements of the course and scope of employment. He represents the first element, that Banks was acting within the authority granted him by Dumas Glass, was evinced by Banks's testimony that he was, at the time of the collision, going back to the shop to see "what was next on the agenda for the day" and possibly pick up a work order. He also represents the second and third elements, that Banks was acting in the furtherance of Dumas Glass's business and for the accomplishment of the object of his employment, was satisfied by the testimony of Osni Megalhaes, president of Dumas Glass, who, although stating that Banks was not within the scope of his employment at the time of the accident, testified that Banks was working for him at the time of the accident; by the evidence that Banks could not use the truck for his personal use and, therefore, he must have been using it for company purposes at the time of the collision; by evidence that the truck furnished Banks provided him a vehicle to carry tools and materials needed to complete a work order for Dumas Glass, which assisted the business; and by the evidence that Banks was returning to the shop, which clearly furthered the business of Dumas Glass.

Notwithstanding Gant's representations, when the evidence revealed that Banks was on his personal business at the time of the accident, the facts that he was working for Dumas Glass and driving its truck did not create a reasonable inference that he was in the course and scope of his employment. *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d at 358. Nor does the fact that Banks was returning from his personal undertaking and was going to the shop to possibly engage in work for Dumas Glass serve to show that he had returned to the zone of his employment, for "[t]he test of liability is whether [Banks] was engaged in [Dumas Glass's] business and not whether he purposed to resume it." *Id.* at 360 (quoting *Southwest Dairy Products Co. v. De Frates,* 132 Tex. 556, 125 S.W.2d 282, 284 (1939)).

It follows that since the presumption was rebutted, there was no evidence to support an inference that Banks was acting in behalf of Dumas Glass at the time of the accident so as to raise the issue of scope of employment. Therefore, the trial court did not err in rendering judgment notwithstanding the jury's finding that Banks was in the course and scope of his employment with Dumas Glass. Gant's seventh point of error is overruled.

Dumas Glass and Banks conditionally offer three cross-points to be addressed only if one or more of Gant's points of error are sustained. Because none of Gant's points have

been sustained, the cross-points are not addressed. Tex.R.App. P. 90(a).

Accordingly, the judgment is affirmed.