NO. 12-03-00371-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


JOE F. CARAWAY AND
WILLIAM H. BAILEY,                                     §     APPEAL FROM THE 58TH
APPELLANTS

V.                                                                         §     JUDICIAL DISTRICT COURT OF

ROBERT C. GRONWALDT, ET AL.,
APPELLEES                                                      §     JEFFERSON COUNTY, TEXAS





MEMORANDUM OPINION
            Appellants Joe F. Caraway and William H. Bailey (collectively “Caraway”) challenge the
trial court’s entry of a take-nothing judgment in favor of Appellees Robert C. Gronwaldt, Mobil Oil
Corporation and Mobil Corporation (now known as ExxonMobil Corporation and referred to as
“ExxonMobil”), National Union Fire Insurance Company of Pittsburgh, PA, American Home
Assurance Company, Insurance Company of the State of Pennsylvania, AIG Risk Management, Inc.,
and American International Group, Inc. (“AIG”).


 In one issue, Caraway contends that the trial court
erred by failing to strike one of the veniremembers for cause. We affirm.

Background
            This appeal stems from one of 300 suits filed against ExxonMobil for its alleged fraud in
lying about its status as a worker’s compensation subscriber.


 Prior to the trial of Caraway’s suit,
all of the potential jurors filled out a jury questionnaire. One of the veniremembers, No. 26, wrote
that his most recent employment was as president of “Williamson Ins.” from 1966-2001. He listed
his father’s main employer as “Owner Williamson Insurance.” He also noted that his “father and
uncle worked for Mobil and [he] sells policies for National Union and AIG,” both of whom were
named defendants in Caraway’s suit.  
            When called to the bench to discuss the questionnaire, No. 26 stated that he did not own
stock in AIG or Mobil, but that as an independent insurance agent, he did “business with AIG
through brokers . . . writing umbrella policies and stuff like that.” During voir dire, he also stated
that he had known the trial counsel for ExxonMobil “for 20 years or so . . . on a personal basis,” but
denied having a deeper relationship beyond being acquaintances. He further told the court that his
father and uncle had worked for Mobil in the 1940s and although he had prior dealings with some
of the defendants, he did not feel uncomfortable in passing on their conduct. He felt like he would
be able to set aside the fact that he had earned and was possibly still earning commissions on the AIG
policies he sold. He also stated that “since this appears to be a worker’s comp case, I don’t imagine
they’re [sic] going to be too many of us insurance agents sitting on the panel.”
            At the conclusion of the general voir dire, Caraway’s counsel informed the court that he was
counsel of record on a recent lawsuit filed against the business owned by No. 26 for the alleged
negligence and fraud arising out of the denial of a $500,000.00 insurance claim. In order to make
sure No. 26 was aware of this situation, the court granted Caraway’s counsel permission to ask him
about the pending litigation. When No. 26 approached the bench, the following exchange took
place:
[CARAWAY’S COUNSEL]:Okay. And you were asked, I think, about some pending lawsuits
that you or your business had been involved in?
 
[NO. 26]:It was settled.
 
Q:Okay. I just – I need to tell you, because we don’t want you all
to find out after you’re on the jury, but I represent Joe
Bloomfield and the family of Leigh Ann Bloomfield in a case
that I just filed, and your business was one of the defendants in
the last couple of months?
 
              A:                                                     Yeah, I forgot about that one.

 
              Q:                                                     And I’ll just be honest with you. I’m concerned that – and it
wasn’t on purpose. Obviously, we had no way of knowing that
you’d be selected for this jury, but that . . . basically that would
sort of tip you over to the point where you would have a problem
being a completely blank slate and – and setting out – setting
aside the fact that you and I or at least your business and I are on
opposite ends of a fairly substantial lawsuit right now.
 
              A:                                                     Right. 
 
              Q:                                                     I just want to know if that – if you agree with me that that would
be something that might interfere with your ability to give me the
same token [sic] as a lawyer that was not involved in a case
against your business. 
 
              A:                                                     Well, I’d – I don’t see how I could keep that out of – out of my
mind.
 
              Q:                                                     And that’s why I just wanted to – 
 
              A:                                                     Yeah.
 
              Q:                                                     – sort of get that in the open now and not have it come
out halfway through the trial, you know, have
somebody mention, oh, I know that law firm, let me tell
you a few things about ‘em, blankety blank. So – 
 
[EXXONMOBIL’S COUNSEL]:[No. 26], the question is can you sit and listen to the evidence
and render a fair verdict regardless of the fact that you may have
been sued in some other extraneous matter by [Caraway’s
counsel’s] law firm?
 
              A:                                                     Well, I think that I could, you know.
 
              Q:                                                     Well, will you do so if selected?
 
              A:                                                     Yes.
 
              Q:                                                     All right. That’s good enough.
 
THE COURT:[No. 26], this is sort of a variation of the question [ExxonMobil’s
counsel] asked you, but what this court has to be very careful
about is to make sure that we have jurors trying the facts of this
case who are not leaning either way and that the leanings only
come after all of the facts and the law has been submitted to you
in this case. 
 
And what I want you to tell me is whether or not – whether or not
you can disregard all other things, especially what’s been brought
to your attention this morning, listen to the evidence, be
governed by the law, and render a fair and impartial verdict in
this case. 
 
              A:                                                     Well, I kind of gave two different answers a minute ago because
I told [Caraway’s counsel] that – that, you know, that would –
that would be on my mind. And I don’t want to go into Mr.
Bloomfield’s situation but he lost a daughter and – and that court
– that case hasn’t come to trial and we don’t know, you know, the
outcome of that’s going to be. You know, I feel like that I could
– that I could listen to the testimony that was given and make a
fair judgment.
 
              THE COURT:                                  Any other questions, [Caraway’s counsel]?
 
[CARAWAY’S COUNSEL]:And again, I know, [No. 26], that you would do your best, but I
think, as I was to understand it, do you have a concern that
despite your best efforts that consciously or subconsciously I’d
be starting out a little bit behind because it’s me and because of
the situation with . . . the Bloomfield family, because I think
everybody agrees that we’re supposed to start out dead even and
not, you know, one way or the other?
 
              A:                                                     Well, I – I – you know, since you brought it up, you know, I
guess that it would weigh on my mind.
 
              THE COURT:                                  Then in light of that, do you feel like if it’s weighing on your
mind, that it could possibly influence your vote? Only you can
answer it. And we appreciate your candor, your honesty and ... 

              A:                                                     It’s – it’s two very separate deals and I – as I – as I said
a minute ago, I think I could make a judgment based on
the – the facts given.
 
              THE COURT:                                  And render a fair and impartial verdict without regard to
anything to do with the Bloomfield matter or anything else, is
that what you’re telling me?
 
              A:                                                     Yes.
 
              THE COURT:                                  Okay. You’ll remain on this jury.
 
            The court later denied Caraway’s motion to strike No. 26 for cause and Caraway was forced
to use one of his peremptory strikes. Caraway argues that the peremptory strike used on No. 26
would otherwise have been used to strike another veniremember who made it onto the jury. This
veniremember was one of the majority members who rendered an 11-1 verdict against Caraway. 

Did the Trial Court Err by Failing to Strike Juror No. 26 For Cause?
            In a single issue, Caraway argues that the trial court erred by failing to strike No. 26 for cause
because of his bias and unwillingness to be fair. ExxonMobil and AIG contend that the trial court
did not abuse its discretion in declining to strike No. 26 because he “consistently said he could be
fair and impartial.”



Standard of Review and Applicable Law
            A person who has a bias or prejudice in favor of or against a party in the case is disqualified
to serve as a juror. Tex. Gov't Code Ann. § 62.105(4) (Vernon 1998). Bias sufficient to disqualify
a juror must be such that the state of mind of the juror leads to the inference that he will not act with
impartiality. Prejudice means prejudgment and therefore includes bias. Compton v. Henrie, 364
S.W.2d 179, 182 (Tex.1963); Buls v. Fuselier, 55 S.W.3d 204, 209 (Tex. App.–Texarkana 2001,
no pet.). If a juror's bias or prejudice is established as a matter of law, the trial court must disqualify
the juror. If it is not established as a matter of law, the trial court makes a factual determination
whether the juror is disqualified. Malone v. Foster, 977 S.W.2d 562, 564 (Tex.1998); Swap Shop
v. Fortune, 365 S.W.2d 151, 154 (Tex.1963); Styers v. Schindler Elevator Corp., 115 S.W.3d 321,
324 (Tex. App.– Texarkana 2003, pet. denied). The trial court is obligated to disqualify a juror only
if it finds that the juror's state of mind leads to the natural inference that the juror will not act 
impartially. See Goode v. Shoukfeh, 943 S.W.2d 441, 453 (Tex.1997) (citing Compton, 364 S.W.2d
at 182); Kiefer v. Continental Airlines, Inc., 10 S.W.3d 34, 39 (Tex. App.–Houston [14th Dist.]
1999, pet. denied). 
            When a trial court refuses to disqualify a juror or jurors for bias or prejudice, the complaining 
party must show that the error was harmful by advising the trial court that the court's refusal to
discharge the jurors for cause would force the party to exhaust his peremptory challenges, and after
exhausting those peremptory challenges, specific objectionable jurors would remain on the panel.
Shepherd v. Ledford, 962 S.W.2d 28, 34 (Tex.1998). The trial court's overruling a challenge for
cause carries with it an implied finding that bias or prejudice does not exist to the degree that it
constitutes disqualification. Thus, whenever the evidence does not conclusively establish the
panelist's disqualification, we must consider all the evidence in the light most favorable to the trial
court's ruling. We will not disturb the finding in the absence of an abuse of discretion. Gant v.
Dumas Glass & Mirror, Inc., 935 S.W.2d 202, 207 (Tex. App.–Amarillo 1996, no writ); Sullemon
v. U.S. Fidelity & Guar. Co., 734 S.W.2d 10, 15 (Tex. App.–Dallas 1987, no writ); Bullard v.
Universal Underwriters Ins. Co., 609 S.W.2d 621, 624 (Tex. Civ. App.–Amarillo 1980, no writ). 
            Neither bias nor prejudice is presumed. Nor is bias or prejudice shown by general questions
because such questions are usually insufficient to show the diligence required to probe the mind of
a veniremember with respect to a legal disqualification. Buls, 55 S.W.3d at 204; Gant, 935 S.W.2d
at 208. The main response that will support a successful challenge for cause is that the
veniremember cannot be fair and impartial because his feelings are so strong in favor of or against
a party or against the subject matter of the litigation that his verdict will be based on those feelings
and not on the evidence. Buls, 55 S.W.3d at 210; see also Julie A. Wright, Challenges for Cause
due to Bias or Prejudice: The Blind Leading the Blind Down the Road of Disqualification, 46
Baylor L. Rev. 825, 838 (1994). 
Analysis
            During voir dire, No. 26 stated that he did not see how he could keep the pending litigation
against his business “out of his mind,” but later told the court that he could sit and listen to the
evidence and render a fair verdict. Although that litigation would “weigh on his mind,” he felt that
he could listen to the testimony that was given and make a fair judgment. When further questioned
by the court about any possible feelings he may have with regard to the litigation, No. 26 agreed that
he could “render a fair and impartial verdict without regard to anything to do with the Bloomfield
matter or anything else.” 
            The responses given by No. 26 to the questions asked do not firmly establish that he could
not fairly consider the evidence in Caraway’s case. Although he stated that he may have had the
pending litigation “on his mind,” he specifically stated that he could listen to all of the evidence and
render a fair and impartial verdict. Accordingly, we find that the trial court, being in a better position
to observe the sincerity and capacity of the panelists for fairness and impartiality, properly exercised
its discretion in not disqualifying No. 26. See Buls, 55 S.W.3d at 210. Caraway’s sole issue is
overruled.
 
Disposition
            The judgment of the trial court is affirmed.
 

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice

 
Opinion delivered February 23, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.











(PUBLISH)