Jennifer **BULS** and Robert **Buls**, Appellants,

v.

Dr. Charles **FUSELIER**, D.P.M., Appellee.

No. 06–00–00055–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 12, 2001.

Decided Aug. 14, 2001.

Rehearing Overruled Sept. 11, 2001.

M. Mark Lesher, Monty G. Murry, Lesher & Murry, Texarkana, for appellant.

Jeffery C. Lewis, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Jennifer Buls appeals from a take-nothing judgment in her suit against Charles Fuselier, D.P.M., for negligent rendition of health care services during two podiatric surgeries.[1] On appeal Buls contends the trial court erred by: excluding certain parts of her experts' testimonies, overruling the challenges for cause of two jurors, and submitting the inferential rebuttal defenses of "sole proximate cause" and "new and independent cause" in its jury charge and allowing expert testimony regarding these issues. We overrule each of these points of error and affirm the judgment of the trial court.

Buls was first examined by Fuselier in November 1994, after receiving treatment from other doctors for various podiatric ailments such as knots on the top of both her feet, calluses on the bottom of both her feet, and the formation of bunions on both her feet. After going to the emergency room with severe foot pain, Buls had Fuselier perform surgery to correct the bunions and hammertoes on both feet, as well as remove the knots from the top of both her feet and the calluses from the bottom of both her feet. Despite Fuselier's preference that the surgeries be performed on only one foot at a time, Buls requested

1. The case style includes Robert Buls due to a loss of consortium claim at trial, which has been dropped on appeal.

that both feet be operated on during the same visit. Buls had surgery on both feet on December 14, 1994, with no complications, but she began having problems with her left foot. She developed an infection, spilled coffee on her foot, and bruised her great toe after tripping over a stump. Shortly after these events, Buls began complaining of pain in the arch of her left foot. After treating Buls for nearly a year, Fuselier diagnosed the source of the pain as a sesamoid bone and recommended its surgical removal. Buls later sought an independent medical recommendation from Dr. Jeff DeHaan, an orthopedist in Texarkana, who concurred with Fuselier's assessment and recommendation. Fuselier performed the sesamoid removal on October 6, 1995.

Buls eventually relocated and began receiving treatment from Dr. Thomas McCloskey, a podiatrist in Tyler, in June 1996. Later, in September 1996, Buls retained counsel, who subsequently referred her to James Naples, a D.P.M. in Texarkana. Naples advised Buls that Fuselier's procedure to remove her bunions was completely unnecessary and that the metatarsal knots on the tops of her feet did not require removal. McCloskey performed surgery on Buls' left foot in February 1997, but the surgery was unsuccessful and left her great toe a centimeter short. No corrective surgery was conducted. Buls' left foot problems were exacerbated when she tripped on a stair and fractured her shortened left great toe in March 1999.

In her first point of error, Buls contends that the trial court erred by excluding a portion of Naples' testimony regarding his allegation that Fuselier performed unnecessary surgeries on Buls' feet solely for remuneration.[2]

As a general rule, all relevant evidence is admissible, including expert testimony. *See* Tex.R. Evid. 401, 402, 702. Like all other relevant evidence having any tendency to make the existence of a consequential fact more or less probable, the admission of relevant expert testimony is favored, and one opposing it has the burden to show that its probative value is substantially outweighed by other factors. *See* Tex.R. Evid. 403, 410. We review the trial court's exclusion of expert testimony under an abuse of discretion standard. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000); *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 718–19 (Tex. 1998). The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998). Because the trial court did not specify the grounds on which it excluded Naples' testimony, we will affirm the trial court's ruling if the ruling is correct on any theory supported by the pleadings and evidence. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999).

Courts have traditionally recognized that something is not true simply because an expert says it is so. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex.1997), *quoting Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir.1987) Moreover, when an expert "br[ings] to court little more than his credentials and a subjective opinion, . . .," it is not evidence that will support a judgment. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d at 712, *citing Viterbo v. Dow Chem. Co.*, 826 F.2d at 421–22.

---

**2.** Buls' attorney preserved this issue for appeal by making an offer of proof on the record. *See* Tex.R. Evid. 103(a)(2), (b).

■ Applying these principles, we find that the court did not abuse its discretion in excluding Naples' testimony regarding remuneration.[3] First, his opinions were highly subjective. Naples testified that he did not believe the surgery on either the bunions or knots was necessary. Naples buttressed his belief by testifying that Buls did not have any bunions. However, a written report documenting Buls' September 1996 visit indicated that during Naples' review of her medical records and x-rays, he found a "moderate bunion deformity." Second, Naples' opinion that Fuselier performed multiple surgeries at the end of a calendar year to avoid losses due to insurance deductibles amounted to nothing more than conjecture and speculation. He did not base his opinion on personal knowledge, but on rumors and hearsay statements from nonparties. *See Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988); *Schaefer v. Texas Employers' Ins. Ass'n,* 612 S.W.2d 199, 202–05 (Tex.1980); *see also Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 706 (Tex.1970). Accordingly, we find that the trial court was within its discretion to exclude the portion of Dr. Naples' testimony that dealt with remuneration. *See Flores v. Ctr. for Spinal Evaluation & Rehab.,* 865 S.W.2d 261, 264 (Tex.App.—Amarillo 1993, no writ).

In her second point of error, Buls contends that the trial court erred by overruling the challenges for cause of two jurors. Buls contends that jurors John Deese and Lewis White were biased and prejudiced against her and the subject matter of her suit. Because of the trial court's refusal to dismiss the jurors, Buls was forced to use two of her peremptory challenges to exclude Deese and White and, therefore, was compelled to accept two other objectionable jurors. In response, Fuselier asserts that Buls did not establish either bias or prejudice as a matter of law and, therefore, the trial court was within its discretion to overrule Buls' challenges.

■ A person who has a bias or prejudice in favor of or against a party in the case is disqualified to serve as a juror. TEX. GOV'T CODE ANN. § 62.105(4) (Vernon 1998). Bias sufficient to disqualify a juror must be such that the state of mind of the juror leads to the inference that he will not act with impartiality. Prejudice means prejudgment and therefore includes bias. *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963); *Excel Corp. v. Apodaca,* 51 S.W.3d 686, 689-691 (Tex.App.—Amarillo 2001, no pet. h.). If a juror's bias or prejudice is established as a matter of law, the trial court must disqualify the juror. If it is not established as a matter of law, the trial court makes a factual determination whether the juror is disqualified. *Malone v. Foster,* 977 S.W.2d 562, 564 (Tex.1998); *Swap Shop v.. Fortune,* 365 S.W.2d 151, 154 (Tex.1963); *Excel Corp. v. Apodaca,* 2001 WL 261663, at *1–2. The trial court is obligated to disqualify a juror only if it finds that the juror's state of mind leads to the natural inference that the juror will not act impartially. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 453 (Tex.1997), *citing Compton v. Henrie,* 364 S.W.2d at 182.

■ When a trial court refuses to disqualify a juror or jurors for bias or prejudice, the complaining party must show that the error was harmful by advising the trial court that the court's refusal to discharge the jurors for cause would force the party to exhaust her peremptory challenges, and after exhausting those peremptory challenges, specific objectionable jurors would remain on the panel. *Shepherd v. Ledford,* 962 S.W.2d 28, 34 (Tex. 1998). The trial court's overruling a chal-

---

**3.** Naples, however, was allowed to testify re-garding the issue of standard of care.

lenge for cause carries with it an implied finding that bias or prejudice does not exist to the degree that it constitutes disqualification. Thus, whenever the evidence does not conclusively establish the panelist's disqualification, we must consider all the evidence in the light most favorable to the trial court's ruling, *Bullard v. Universal Underwriters Ins. Co.*, 609 S.W.2d 621, 624 (Tex.Civ.App.—Amarillo 1980, no writ), and we will not disturb the finding in the absence of an abuse of discretion. *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 207 (Tex.App.—Amarillo 1996, no writ); *Sullemon v. U.S. Fid. & Guar. Co.*, 734 S.W.2d 10, 15 (Tex.App.—Dallas 1987, no writ); *see generally* W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L.J. 351, 434 (1998).

■ Neither bias nor prejudice is presumed. Nor is bias or prejudice shown by general questions, because such questions are usually insufficient to show the diligence required to probe the mind of a veniremember with respect to a legal disqualification. *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d at 208; *Roy L. Jones Truck Line v. Johnson*, 225 S.W.2d 888, 896 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.).

■ Venireman Deese was questioned regarding his relationship with defense counsel. Deese admitted that he had known Jeffery Lewis, Fuselier's attorney, in both a professional and social capacity for over twenty years. Deese consequently answered in the affirmative when asked whether his personal knowledge of Lewis could cause a problem in the case. Finally, Deese commented that in light of this potential problem, he would "certainly" like to be excused from the jury panel. Venireman White indicated that because his daughters worked in medical administrative capacities, he "might be" influenced in the case. White then commented that

he had heard of people "trying to get something for nothing." Finally, White indicated that because one of his daughters left her position at Collom and Carney Clinic, a medical facility, in some distress, he did not know whether he "could be fair in this situation."

■ The key response that supports a successful challenge for cause is that the veniremember cannot be fair and impartial because the veniremember's feelings are so strong in favor of or against a party or against the subject matter of the litigation that the veniremember's verdict will be based on those feelings and not on the evidence. *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d at 208; *see also* Julie A. Wright, *Challenges for Cause due to Bias or Prejudice: The Blind Leading the Blind Down the Road of Disqualification*, 46 Baylor L.Rev. 825, 838 (1994).

■ The collective responses of both Deese and White do not conclusively establish that either of them could not fairly consider the evidence in the case before them. Buls' attorney failed to adequately explore the issue of whether each juror could listen to the evidence and reach a verdict based on that evidence and not their feelings. Moreover, the Texas Supreme Court has held that even if a juror admits having a slight bias in favor of a party, as juror Deese arguably did, disqualification as a matter of law is still not established. *Goode v. Shoukfeh*, 943 S.W.2d at 453. Accordingly, we find that the trial court, being in a better position than we to observe the sincerity and capacity of the panelists for fairness and impartiality, properly exercised its discretion in not disqualifying the challenged jurors.

■ Buls also contends that the trial court erred by submitting instructions on the inferential rebuttal defenses

of sole proximate cause[4] and new and independent cause[5] in its jury charge, and allowing expert testimony on these issues without being affirmatively pleaded by Fuselier.[6]

 Inferential rebuttals are defensive theories that operate to rebut an essential element of the plaintiff's case by proving the truth of certain other facts. *See Erickson v. Deayala,* 627 S.W.2d 475, 478–79 (Tex.App.—Corpus Christi 1981, no writ). They are distinct from affirmative defenses in that an inferential rebuttal, as the name implies, rebuts part of the plaintiff's cause of action, while an affirmative defense relieves the defendant of liability even if all the elements of the plaintiff's cause of action are established. *See Moulton v. Alamo Ambulance Serv., Inc.,* 414 S.W.2d 444, 448 (Tex.1967); *see also* 1 TEXAS TORTS AND REMEDIES: PRINCIPLES OF LIABILITY § 2.12[1] (Matthew Bender & Co., July 1998 & Supp. Feb. 2000).

 Evidence supporting an inferential rebuttal is admissible under a general denial, since its purpose is to rebut an element of the plaintiff's cause of action. *Schumacher Co. v. Shooter,* 132 Tex. 560, 124 S.W.2d 857, 859 (1939); *Erickson v. Deayala,* 627 S.W.2d at 478–79; *Missouri Pac. R.R. Co. v. United Transps., Inc.,* 518 S.W.2d 904, 910 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd); *see* TEX.R. CIV. P. 92; 1 TEXAS TORTS AND REMEDIES: PRINCIPLES OF LIABILITY § 2.12[3] (Matthew Bender & Co., July 1998 & Supp. July 2000). In fact, we have recently held in *Humble*

Sand & Gravel v. Gomez, 48 S.W.3d 487, 506 (Tex.App.—Texarkana, 2001, no. pet. h.), that where the evidence adduced at trial raises the issue of new and independent cause, a trial court does not necessarily abuse its discretion by only submitting an instruction on a corollary inferential rebuttal issue such as sole proximate cause. *Id.* at 507.

Buls contends that simply pleading a general denial is not enough to justify an instruction on inferential rebuttals and that such issues must be affirmatively raised by the pleadings. *See Charter Oak Fire Ins. Co. v. Taylor,* 658 S.W.2d 227, 228–29 (Tex.App.—Houston [1st Dist.] 1983, no writ). In order to analyze the viability of the holding in *Charter Oak,* it is necessary to examine its progeny as well as its original predicate. *See Fitzsimmons v. Brake Check, Inc.,* 832 S.W.2d 446, 448 (Tex.App.—Houston [14th Dist.] 1992, no writ) (sole proximate cause may be submitted as an instruction when supported by the pleadings and evidence); *Reid v. Best Waste Sys., Inc.,* 800 S.W.2d 644, 646 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Ahlschlager v. Remington Arms Co.,* 750 S.W.2d 832, 835 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Heritage Manor, Inc. v. Tidball,* 724 S.W.2d 952, 955 (Tex.App.—San Antonio 1987, no writ).

Each of these cases, including *Charter Oak,* represents a divergence from the line of cases discussed previously. This diver-

---

**4.** "Sole proximate cause" is based on the conduct of a third party and is a viable defense in negligence cases. *Herrera v. Balmorhea Feeders, Inc.,* 539 S.W.2d 84, 86 (Tex.Civ. App.—El Paso 1976, writ ref'd n.r.e.).

**5.** A "new and independent cause" is "the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and

thereby becomes, in itself, the immediate cause of such injury." *Phoenix Refining Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935); see *also Eoff v. Hal & Charlie Peterson Found.,* 811 S.W.2d 187, 192 (Tex.App.—San Antonio 1991, no writ).

**6.** Fuselier made a general denial pursuant to TEX.R. CIV. P. 92.

gence began when the First Court of Appeals, in *Charter Oak*, improperly cited *Evans v. Cas. Reciprocal Exch.*, 579 S.W.2d 353 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), *citing Webb v. Western Cas. & Sur. Co.*, 517 S.W.2d 529, 530 (Tex. 1974), for the proposition that the issue of sole proximate cause is submitted to the jury *when the pleadings raise the issue.*

We believe the First Court of Appeals failed to recognize that the *Evans* court was discussing the previous treatment of inferential rebuttals before the 1973 amendment to Tex.R. Civ. P. 277. Similarly, the Texas Supreme Court in *Webb* distinguished between the prior treatment of inferential rebuttals as special issues requiring affirmative pleading and the present requirement that they need only be raised by the evidence. This divergence was further exacerbated when the Fourteenth Court of Appeals, in *Best Waste Systems*, incorrectly cited *Lemos v. Montez*, 680 S.W.2d 798 (Tex.1984), for the proposition that inferential rebuttals *must be raised by the pleadings* and the evidence. In fact, in *Lemos*, the Texas Supreme Court never mentioned that inferential rebuttals must be pleaded, and the court analyzed whether the evidence adduced at trial supported their introduction by a jury instruction.[7]

■ Some historical perspective will aid in understanding how this anomaly developed. In the past, inferential rebuttals were submitted to the jury as special issues and were required to be affirmatively pleaded and supported by evidence at trial. *See Webb v. Western Cas. & Sur. Co.*, 517 S.W.2d 529, 530 (Tex.1974); *Quintanilla v. TEIA*, 250 S.W.2d 751, 752 (Tex. Civ.App.—San Antonio 1952, writ ref'd

n.r.e.); *see also* 34 Gus M. Hodges & T. Ray Guy, Texas Practice: The Jury Charge in Texas Civil Litigation § 72 (1988). However, in 1952, the Texas Supreme Court began shifting away from including inferential rebuttals as special issues in favor of simply including them as definitional instructions.[8] The Texas Supreme Court eventually completed this shift in 1973 by amending Tex.R. Civ. P. 277, thereby abolishing the requirement that issues be submitted distinctly and separately. *Lemos v. Montez*, 680 S.W.2d at 801. This amendment provided that inferential rebuttals may not be submitted to the jury as questions, but may be submitted as instructions or definitions. *Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824 (Tex.App.—El Paso 1993, writ denied); *see also* 34 Gus M. Hodges & T. Ray Guy, Texas Practice: The Jury Charge in Texas Civil Litigation §§ 73, 75 (1988). Since that time, broad issues have been repeatedly approved by the Texas Supreme Court as the correct method for jury submission. *Lemos v. Montez*, 680 S.W.2d at 801.

■ The standard of review for error in a court's charge is abuse of discretion. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990); *Humble Sand & Gravel v. Gomez*, at 506. An abuse of discretion occurs when the trial court acts without reference to guiding principles. *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d at 649; *Humble Sand & Gravel v. Gomez*, at 506. The jury need not and should not be burdened with surplus instructions. *Acord v.. Gen. Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984). An improper jury charge requires reversal only when, considering the circumstances

---

7. It is our hope that this analysis will help clarify for the bench and bar the treatment to be afforded inferential rebuttal issues.

8. *See Dallas Ry. & Terminal Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379 (1952); *see also Yarborough v. Berner,* 467 S.W.2d 188 (Tex. 1971).

of the case, including the charge as a whole and the statements and arguments of counsel, the error was calculated to cause and probably did cause the rendition of an improper judgment. *Berry Prop. Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 661 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

Accordingly, in light of the 1973 amendment to Rule 277, which prohibits the submission of inferential rebuttal questions in the jury charge, the requirement imposed by Rule 278–that the trial court shall submit questions, instructions, and definitions, raised by written pleadings and the evidence in the form provided by Rule 277, appears to no longer be implicated.[9]

We therefore find that the trial court did not abuse its discretion by including instructions on the inferential rebuttal defenses of sole proximate cause and new and independent cause in its charge to the jury because they were properly raised by evidence of a subsequent failed foot surgery by McCloskey, as well as evidence of other traumas to Buls' left foot. Moreover, in light of the admissibility of such instructions, we find that the trial court was well within its discretion to allow testimony, expert or otherwise, regarding the inferential rebuttal issues previously discussed.

For the reasons stated, we affirm the judgment of the trial court.

GRANT, Justice, dissenting.

First, I disagree with the majority's conclusion that the portion of Dr. James Naples's testimony was properly excluded by the trial court. This involved two areas of testimony: (1) An inconsistency in Dr. Naples's testimony did not justify exclusion of the testimony, but rather was a matter for the fact finder as to whether the inconsistent statement impeached the credibility of the witness. The testimony involved different terminology, and this should have been a fact issue for the jury. (2) Dr. Naples testified that in his opinion Dr. Charles Fuselier performed a lot of surgery for money that was unnecessary surgery. This testimony was relevant to the issues raised by the pleadings. Dr. Naples testified that he based his opinion on the facts, the x-rays, and medical reports, that he had seen a number of cases where Dr. Fuselier had done multiple procedures at the end of the year, that there would be an economic advantage to the doctor for performing such surgery at that time, that he had seen many patients with complications from the multiple procedures, and that it was his opinion that this unnecessary surgery was gross negligence. This medical expert was in a position of having observed x-rays and medical reports. This is the type of information that medical experts can rely on to reach such conclusions. He had before him sufficient information on which he could reach a reasonable inference in formulating his opinion. This evidence should not have been excluded.

The majority cites the Texas Supreme Court opinion of *Goode v. Shoukfeh*, 943 S.W.2d 441, 453 (Tex.1997), to show that a slight bias by a juror does not disqualify

---

**9.** *See* 34 Gus M. Hodges & T. Ray Guy, Texas Practice: The Jury Charge in Texas Civil Litigation § 75 (1988) (indicating that with the demise of inferential rebuttal issues, there is no longer a requirement that such theories be affirmatively pleaded. Moreover, there is no explicit provision in any of the rules to the effect that a general denial is insufficient to support the inclusion of an instruction.); *but*

*see* 1 Texas Torts and Remedies: Principles of Liability § 2.12[3] (Matthew Bender & Co., July 1998 & Supp. Feb. 2000) (indicating that the language of Rule 278 still requires an affirmative pleading for submission of inferential rebuttal issues even as instructions; however, alludes to uncertainty regarding the necessity of pleading such issues).

the juror as a matter of law. The venireman in this case showed more than a slight bias. The Texas Supreme Court in *Goode* defined bias as "an inclination toward one side of an issue rather than the other, but to disqualify it must appear that the state of mind of the juror leads to the natural inference that he [or she] will not or did not act with impartiality." *Goode,* 943 S.W.2d at 453 (citing *Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963)). The Texas Supreme Court goes on to say that prejudice is defined as "prejudgment, and consequently embraces bias." *Goode,* 943 S.W.2d at 453.

As set forth in the majority opinion, John Deese stated in voir dire in the present case that his personal knowledge of one of the attorneys could cause a problem in the case, that the attorney was the consulting attorney for his employer, that he had known the attorney personally for twenty years in a number of capacities, that he considered him a very close friend, that his friendship could cause a problem in the case, and that he would like to be excused. This voir dire response demonstrates an inclination toward one side and the venireman believed that he could not act impartially. The juror's frank admission of this bias because of friendship was sufficient to support the challenge for cause unless he testified that he could put that matter aside and base his verdict solely on the evidence, which he did not.

Venireman Lewis White told the court during voir dire that he would have trouble sitting in judgment in a medical malpractice case because he had two daughters who were directors of medical records at two different hospitals, that he felt like matters he had heard from his daughters might influence him in the case, and that he had been told that people are trying to get something for nothing. He also told the court that one of his daughters had left

her employment with a medical facility in distress, so that he was not sure he could be fair in this situation. He was unresponsive to the court's question of whether he could listen to the evidence in the case and be completely fair and impartial.

A motion was made to strike these jurors for cause, but the trial court denied that motion, and counsel was forced to use peremptory challenges.

For these reasons, I dissent.