NO. 07-00-0367-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 26, 2002
_____

In re H. R. S., a Child
_____

FROM THE COUNTY COURT AT LAW NO. 2  OF POTTER COUNTY;

NO. 55,100-2; HON. DELWIN McGEE, PRESIDING
_____

Before Boyd, C.J., Quinn, and Johnson, JJ.

Appellants James Edward Swanson (James) and Orville James Swanson (Orville) appeal from an order entitled "Order of Termination."   Therein, the trial court terminated the parent / child relationship between James and H.R.S. and the possessory conservatorship of Orville over the same child.  The four issues presented to us concern the legal and factual sufficiency of the evidence underlying the decisions.  We affirm.

### Issues One and Three — Engaged in Conduct Endangering and the Best Interests of the Child

The trial court found, among other things, that James "engaged in conduct . . . which endanger[ed] the physical or emotional well-being of" H.R.S. and "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition."  So too did it conclude that terminating the parent / child relationship between James and H.R.S. would be in the best interests

of the child. For these reasons, the relationship was terminated. James contends that none of the aforementioned findings enjoyed sufficient evidentiary basis. We disagree.

*Standard of Review*

The applicable standards of review were discussed in *In re M.D.S.*, 1 S.W.3d 190 (Tex. App.--Amarillo 1999, no pet.) and *In re R.D.S.*, 902 S.W.2d 714 (Tex. App.--Amarillo 1995, no writ). We refer the litigants to them for an explanation of those standards.

*Application of Standard*

*1.    Endangerment*

A trial court may terminate the parent / child relationship upon receipt of evidence which clearly and convincingly illustrates that the parent "engaged in conduct . . . which endangers the physical or emotional well-being of the child" and that termination furthers the best interests of the child. TEX. FAM. CODE ANN. §161.001(1)(E) & (2) (Vernon Supp. 2002). Proof of the commission of violent or negligent conduct directed at another parent or another child, even though not committed in the child's presence, demonstrates such conduct. *In re B.R.*, 950 S.W.2d 113, 119-20 (Tex. App.--El Paso 1997, no writ) (wherein the father murdered the mother).

Here, the trial court had before it evidence that: 1) James was on probation for burglary when he committed several acts of arson, to which acts he admitted; 2) the acts consisted of setting fire to his house and that of his neighbor on separate occasions; 3) at the time the acts were committed, he knew that one or more occupants of the house were present therein; 4) the person occupying his house at the time was his stepdaughter; 5)

2

he realized he could have killed his stepdaughter; 6) he did not know why he set the fires; 7)

he has not received counseling with regard to his acts of arson; and, 8) he could not say that had H.R.S. been in the house at the time he contemplated the arson he would have acted differently. Intentionally setting fire to several homes while 1) knowing that one holds your stepdaughter and the other your neighbors, 2) not knowing why you did so, and 3) failing to seek counseling thereafter, is clear and convincing evidence of a course of conduct endangering H.R.S.' well-being.

That H.R.S. was not present when the arson occurred matters not for several reasons. First, James was unable to say that had she been within the home he would have acted differently. Not knowing whether her presence would have affected his conduct hardly suggests that she was somehow insulated from it. Second, one need not prove that the misconduct creating the danger was directed at the child or that the child actually suffered injury to succeed in terminating parental rights. *Texas Dep't of Human Serv. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It is enough that the evidence illustrated a course of conduct endangering the physical or emotional well-being of the child. *Id.* And, committing several acts of arson knowing that the homes were occupied at the time by neighbors *and* one's own stepchild has such an effect.

  2. *Best Interests*

3

As to the best interests of H.R.S., we again refer to the evidence of arson, James' apparent disregard for the life of those in the houses, and his inability to suggest that H.R.S.' presence would have affected his conduct in any way. To this we had evidence of James' historic inability or failure to financially support the child as ordered by the court, his failure to regularly visit the girl (who resided in San Antonio at the time of trial), his failure to maintain medical insurance covering the child, and H.R.S.' stability at her current home. Combined, that evidence provides ample basis upon which a trial court could have found, clearly and convincingly, that termination of the parent / child relationship was in the best interests of H.R.S. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)(holding as informative when assessing the child's best interest such factors as the emotional and physical needs of the child now and in the future, the parental abilities of the individuals seeking custody, the plans for the child by those seeking custody, the stability of the home environment both past, present and future, the acts or omissions of the parent, and any excuse for the acts or omissions of the parent).

*Conclusion*

Thus, in perusing the record only for evidence supporting the trial court's decision, we find ample evidence. And, when that evidence is compared to the remaining portions of the record, we cannot say that the decision to end the parent / child relationship was wrong. So, we reject the contentions regarding the legal and factual sufficiency of the evidence.[1]

---

[1]Holding as we do relieves us from having to address issue two, *i.e.* that the evidence was both legally and factually insufficient to uphold the finding that James failed to support his daughter. This is so because either ground, if supported by the evidence, permitted termination. And, having already held that

### *Issue Four — Modification of Possessory Conservator*

Next, Orville contends that the trial court abused its discretion in nullifying his status as a possessory conservator. This is allegedly so because the evidence fails to support the finding that continuation of the appointment would endanger the physical or emotional welfare of the child.[2] We overrule the issue.

*Standard of Review*

One's status as possessory conservator can be altered for various reasons. They include, among other things, a material and substantial change in circumstances of the child or conservator since initial appointment or 2) the existence of circumstances which render the conservatorship unworkable or inappropriate. TEX. FAM. CODE ANN. §156.301(1) & (2). Furthermore, the decision to so alter that status is reviewed under the standard of abused discretion. *In re Chandler*, 914 S.W.2d 252, 253 (Tex. App.--Amarillo 1996, no writ). And, whether discretion is abused depends upon whether the court acted without reference to any guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). So, as long as the decision enjoys support in law and fact, it cannot be considered an abuse of discretion. Finally, because the standard is one of abused discretion, our review is not limited to determining whether the reasons proffered by the court to justify its decision were accurate. Rather, we may affirm the decision if other

---

one did, we need not consider the other.

[2]In its findings of fact and conclusions of law, the trial court stated that the "appointment" of Orville as possessory conservator would not be in the best interests of the child. He had already been appointed and held that status at time of trial. Thus, reference to his "appointment" was inaccurate. Nevertheless, we view the error to be nothing more than typographical in nature given that Orville was a possessory conservator and the state sought the termination of that custodial status.

grounds illustrate it to be correct. *Buls v. Fuselier*, 55 S.W.3d 204, 208 (Tex. App.–Texarkana 2001, no pet.).

*Application*

Appearing of record is evidence that since the rendition of the initial possession order 1) William Corder (Orville's stepson with whom Orville regularly visits) confessed to murdering H.R.S.'s mother, 2) Orville's wife, Kathy, committed and admitted to shoplifting, 3) Orville and Kathy either underwent or are undergoing psychological treatment, 4) Orville and Kathy were prescribed medication to alleviate mental or emotional problems, and 5) the parental rights of James have been terminated. So too did the trial court hear and receive evidence indicating that during the exercise of Orville's visitation, H.R.S. 1) appeared frightened when she saw him, 2) was reluctant to start visiting with him, 3) seemed confused, and 4) cried after the visits. Finally, testimony imparted by Kathy could lead one to reasonably infer that she and Orville desired custody to enhance James' opportunity to see H.R.S. These are indicia upon which the trial court could have concluded that the termination of Orville's status as a possessory conservator was in the best interests of H.R.S. Thus, the trial court's decision was not an example of abused discretion.

Accordingly, we affirm the Order of Termination.

Brian Quinn
Justice

Do Not Publish.

6