In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00070-CV


______________________________




DOROTHY ANN BRAY, Appellant



V.



CHARLES O. FUSELIER, D.P.M., Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 99-C-1597-202




 




Before Ross, Carter, and Cornelius,* JJ.


Opinion by Justice Ross


*William J. Cornelius, C.J., Retired, Sitting by Assignment



O P I N I O N



 Dorothy Ann Bray sued Charles O. Fuselier, D.P.M., for medical malpractice. The
trial court granted summary judgment for Fuselier. Bray appeals, alleging: (1) the trial
court erred in considering Fuselier's motion as a no-evidence motion for summary
judgment; and (2) there was sufficient evidence in the record to raise at least a fact
question concerning the elements of Bray's cause of action.

 Bray sued Fuselier for negligence after he removed the nail of her right big toe. In
her petition, Bray contended Fuselier (1) negligently removed her right hallux toenail; (2)
negligently rendered post-surgical care by failing to recognize and/or treat an infectious
process that proximately caused osteomyelitis, an infection in the bone; and (3) negligently
failed to refer her to a competent healthcare provider. Two years after Bray filed her
original petition, Fuselier filed what he considered a no-evidence motion for summary
judgment. In this motion, he contended the existence of osteomyelitis was the sole
foundation of Bray's claims against him. He attached excerpts of Bray's discovery
responses and a letter from Bray's expert, James J. Naples, D.P.M., to his motion for
summary judgment "for the limited purpose of evidencing Plaintiff's contentions." Bray
contends that attaching these documents to the motion transformed the no-evidence
motion into a traditional motion for summary judgment. 

 After adequate time for discovery, a party may move for summary judgment, without
presenting summary judgment evidence, on the ground there is no evidence of one or
more essential elements of a claim or defense on which an adverse party would have the
burden of proof at trial. Tex. R. Civ. P. 166a(i). According to Fuselier, Bray had presented
no evidence she had osteomyelitis.

 Fuselier's motion was entitled "Defendant's 'No Evidence' Motion for Summary
Judgment," and also stated, "This is a 'no-evidence' motion for summary judgment
governed by Rule 166a(i)." Fuselier contended in his motion that, although Bray's petition
alleged he (1) negligently removed her right hallux toenail, (2) negligently rendered post-surgical care by failing to recognize and treat an infectious process that proximately caused
osteomyelitis, and (3) negligently failed to refer her to a competent healthcare provider,
Bray had clarified through discovery responses that the sole foundation of her claims
against Fuselier was the existence of osteomyelitis. Fuselier then attached to his motion
excerpts from Bray's discovery responses "for the limited purpose of evidencing Plaintiff's
contentions."

 Bray contends these attachments caused Fuselier's motion to no longer qualify as
a no-evidence motion for summary judgment. Bray argues that a no-evidence summary
judgment motion should be made without presenting evidence to support the motion. We
agree, but the attachments in this case were used only for clarification purposes, not as
summary judgment evidence. Fuselier was careful to point out the limited purpose of the
attachments. Moreover, he clearly labeled the motion as a no-evidence motion and
referenced Rule 166a(i) within the motion. Because Fuselier's intent was evidenced within
the motion and the attachments were for clarification of Bray's contentions only, we find
that his motion was a no-evidence motion for summary judgment. Bray's first point of error
is overruled. 

 Bray contends in her second point of error the trial court erred in granting Fuselier's
no-evidence motion for summary judgment because there was enough evidence in the
record to raise at least a fact question that all elements of her cause of action were
supported by competent evidence. When a party moves for a no-evidence summary
judgment, that party does not bear the burden of establishing each element of its own
claim or defense. Trusty v. Strayhorn, 87 S.W.3d 756, 759 (Tex. App.-Texarkana 2002,
no pet.). Instead, the nonmoving party must present evidence that raises a genuine fact
issue on the challenged elements of the claims on which the nonmovant would have the
burden of proof at trial. See id. When we review a no-evidence summary judgment, we
consider all the evidence in the light most favorable to the nonmovant, disregarding all
contrary evidence and inferences. Id. A no-evidence summary judgment is improperly
granted if the nonmovant presents more than a scintilla of probative evidence to raise a
genuine issue of material fact on the challenged elements. Id. More than a scintilla of
evidence exists when the evidence rises to a level that would enable reasonable and fair-minded persons to differ in their conclusions. Id. 

 To prove the existence of osteomyelitis, Bray offered her medical records, an expert
report and various affidavits from Naples, who, in addition to being her expert in this case,
was also Bray's treating podiatrist after she terminated her relationship with Fuselier. 
Fuselier objected to Naples' report on two grounds: (1) it is hearsay, and (2) it is an Article
4590i report which, under that article, is inadmissible as evidence. Fuselier did not obtain
rulings on his objections to the report. Bray then submitted an affidavit from Naples in
which he adopted the "observational opinions" of his expert report. Fuselier objected to
this affidavit because "observational opinions" was vague and ambiguous, and because
Naples' testimony regarding the standard of care was conclusory and lacked a proper
foundation; Fuselier also maintained the report remained inadmissible as a 4590i report,
despite being "wrapped" in an affidavit. Fuselier again did not obtain rulings on these
objections. Bray filed a second affidavit from Naples. Fuselier then filed a motion to strike
Naples' testimony as being unreliable and irrelevant under E.I. du Pont de Nemours & Co.
v. Robinson, 923 S.W.2d 549 (Tex. 1995). Fuselier also pointed out in this motion that the
second affidavit from Naples, filed April 3, 2002, did not bear a notary seal. (1) Fuselier again
did not obtain rulings from the trial court on his motion to strike or on his objection to the
absence of a proper seal. Bray asked the court for leave to correct the notary seal
deficiency, and on April 29, 2002, filed an affidavit with the proper seal. The trial court,
however, had already granted summary judgment on April 19, 2002. 

 In granting Fuselier's motion for summary judgment, the trial court stated, "The
Court, having heard Defendant's 'No Evidence' Motion for Summary Judgment, is of the
opinion the motion is well-taken and should be granted." Fuselier contends the trial court's
rulings on his objections to Bray's summary judgment evidence were implicit in the court's
granting of summary judgment in his favor. Bray contends all of Fuselier's objections were
waived because he failed to obtain rulings from the trial court. 

 Naples stated in his second affidavit, "Radiographic evaluation revealed boney
changes consistent with osteomyelitis. Mrs. Bray also underwent CT scans, as well as an
MRI, which confirmed the diagnosis of osteomyelitis with positive cultures." Relying on
In re Estate of Loveless, Fuselier contends this affidavit is incompetent as summary
judgment evidence. See In re Estate of Loveless, 64 S.W.3d 564, 571 n.3 (Tex.
App.-Texarkana 2001, no pet.). In Loveless, we found the affidavits incompetent because
they were not signed or notarized. Id. In this case, the affidavit was signed by both Naples
and the notary, but lacked the notary's seal. The lack of a notary's seal is a defect in form. 
See Morphis v. Blanton, No. 01-84-0114-CV, 1984 Tex. App. LEXIS 6858, at *8-9 (Tex.
App.-Houston [1st Dist.] 1984) (not designated for publication). 

 A party who seeks to affirm summary judgment must object to defects in the form
of summary judgment affidavits at the trial level. See Trusty, 87 S.W.3d at 763. Moreover,
the objecting party must obtain a ruling on his or her objections. Id. If no ruling is obtained,
the objecting party cannot rely on the defect in form for affirming summary judgment. See
id. at 764. Because Fuselier did not obtain a ruling on his objection, he cannot rely on the
defect in form found in Naples' second affidavit for affirming summary judgment. 

 Even so, Fuselier contends "this appeal presents more than mere objections to
summary judgment proof . . . [because] Dr. Fuselier lodged a separate Robinson challenge
to the reliability and relevancy of Naples' testimony." According to Fuselier, Weiss v.
Mechanical Associated Services is directly on point with respect to an implicit ruling on a
Robinson challenge. See Weiss v. Mech. Associated Servs., 989 S.W.2d 120 (Tex.
App.-San Antonio 1999, pet. denied). In Weiss, the plaintiff sued various defendants for
negligent acts she contended caused the circulation of glutaraldehyde inside her
workplace, proximately causing her health-related injuries. Id. The defendants filed a no-evidence motion for summary judgment, stating that there was no evidence glutaraldehyde
was present in the building, that Weiss was exposed to glutaraldehyde, or that Weiss'
illness was caused by glutaraldehyde. The defendants also maintained that, in the
absence of data or other evidence of glutaraldehyde emission and exposure, any expert
testimony regarding causation would be "no evidence." Id. The plaintiff contended on
appeal the defendants did not preserve their Robinson challenge because they failed to
request a Robinson hearing and secure a formal Robinson ruling from the trial court. Id.
at 124 n.6. However, the San Antonio court stated in a footnote:

 Weiss's contentions are without merit because she carried the burden to
bring forward competent evidence. Furthermore, she was notified of the
defendants' intent to challenge the scientific reliability of her evidence when
she was served with their motions for summary judgment. Finally, the trial
court's order is, in effect, a ruling on the defendants' Robinson challenge. 


Id.


 Fuselier urges this Court to follow the San Antonio court and find the trial court's
granting of summary judgment to be an implicit ruling on his Robinson challenge. Fuselier,
however, made numerous other objections to Bray's summary judgment evidence. It could
be argued that the court's granting of summary judgment was an implicit ruling on any one
of these other objections. Considering these other objections for which no ruling was
obtained, we cannot say the court's granting of summary judgment was an implicit ruling
on Fuselier's Robinson challenge. Nonetheless, we will consider Fuselier's contentions,
because whether Naples is qualified as an expert in the case goes to the substance of the
affidavit. See Crow v. Rockett Special Util. Dist., 17 S.W.3d 320, 324 (Tex. App.-Waco
2000, pet. denied). 

 Fuselier contends Naples' testimony was unreliable and irrelevant. He points out
that Naples is a competing podiatrist. He also contends Naples holds highly subjective
opinions about Fuselier, ones formed solely for the purpose of testifying, rather than being
based on documented evidence. Fuselier also points out we have excluded Naples'
testimony against Fuselier in the past. See Johnson v. Fuselier, 83 S.W.3d 892 (Tex.
App.-Texarkana 2002, no pet.); Buls v. Fuselier, 55 S.W.3d 204 (Tex. App.-Texarkana
2001, no pet.). 

 Fuselier does not question Naples' qualifications as an expert, but contends Naples'
opinions are unreliable and irrelevant because of Naples' methodology in creating those
opinions. Fuselier asserts Naples "opts to form his opinions against Dr. Fuselier solely for
the purpose of testifying rather than basing them on documented evidence." To prove this
point, Fuselier directs our attention to Bray's discharge summary, written by Naples, which
Fuselier contends contradicts what Naples later said in his affidavits and expert report. 

 The discharge summary read, "Radiographs did demonstrate possible osteomyelitis
to the distal phalanx of her right hallux." Naples' expert report stated, "Radiographic
evaluation revealed boney changes, consistent with osteomyelitis. She also had CT scans,
as well as an MRI, which confirmed the diagnosis of osteomyelitis with positive cultures."
Naples' second affidavit stated, "Radiographic evaluation revealed boney changes
consistent with osteomyelitis. Mrs. Bray also underwent CT scans, as well as an MRI,
which confirmed the diagnosis of osteomyelitis with positive cultures." 

 Fuselier contends Naples contradicts himself in his "own pre-litigation
documentation," just as he did in Buls. However, a "possibility of osteomyelitis" is not
inconsistent with the statements later made in Naples' expert report and affidavits. Neither
is it the type of inconsistency found in Buls, where Naples testified he did not believe Buls
had any bunions, even though he had previously reported finding a "moderate bunion
deformity." Buls, 55 S.W.3d at 209. Despite Fuselier's assertions, we do not find any
inconsistencies between Naples' prelitigation documentation and his expert report and
affidavits. The record contains no evidence Naples "manufactured" his opinions for
litigation purposes; in fact, the record reflects Naples based his opinions on his personal
treatment and care for Bray, in addition to the results from a CT scan and an MRI. 

 Ultimately, this is an appeal from the trial court's order granting Fuselier's
no-evidence motion for summary judgment. As stated, when we review a no-evidence
summary judgment, we consider all the evidence in the light most favorable to the
nonmovant and disregard all contrary evidence and inferences. A no-evidence summary
judgment is improperly granted if the nonmovant presents more than a scintilla of probative
evidence to raise a genuine issue of material fact on the challenged elements. In this
case, Naples' second affidavit presented more than a scintilla of probative evidence to
raise a genuine issue of material fact regarding the existence of osteomyelitis. The
affidavit said CT scans and an MRI "confirmed the diagnosis of osteomyelitis." 
Accordingly, Bray's second point of error is sustained.

 We reverse the judgment and remand this cause to the trial court for further
proceedings.


 Donald R. Ross

 Justice 


Date Submitted: April 16, 2003

Date Decided: May 14, 2003


OPINION ON REHEARING



 In a motion for rehearing, Fuselier contends we should have applied an abuse of
discretion standard of review when ruling on Fuselier's Robinson (2) challenge to Naples'
opinion. Fuselier states in his motion, "[i]f, when rendering summary judgment, the trial
court concluded Naples' opinion was unreliable and inadmissible, a reversal and remand
by this Court requires a determination that the trial court abused its discretion." The test
for an abuse of discretion is whether the trial court acted without reference to any guiding
rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). A review for an abuse of discretion, however, would have required us to conclude
the trial court "acted" with respect to Fuselier's Robinson challenge. Although Fuselier
maintained the trial court implicitly ruled on his Robinson challenge, we rejected this
argument, saying:

 Fuselier . . . made numerous other objections to Bray's summary judgment
evidence. It could be argued that the court's granting of summary judgment
was an implicit ruling on any one of these other objections. Considering
these other objections for which no ruling was obtained, we cannot say the
court's granting of summary judgment was an implicit ruling on Fuselier's
Robinson challenge.


Because we concluded the trial court did not rule on Fuselier's Robinson challenge, we had
no act to review for an abuse of discretion. We discussed Naples' qualifications as an
expert only because his qualifications went to the substance of the affidavit offered as
evidence by Bray. 

 The motion is overruled.


 Donald R. Ross

 Justice


Date: June 9, 2003



1. Fuselier objected to our consideration of this affidavit because it was attached to
Bray's brief and was not included in the original clerk's record. This Court requested and
obtained the affidavit in a supplemental clerk's record. See Tex. R. App. P. 34.5(c)(1), (3).
2. E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995).


 type="text/javascript" language="javascript">
 if( bInlineFloats )
 {
 document.write( '' );
 document.write( WPFootnote7 );
 document.write( '
Close' );
 document.write( '' );
 }

 Giddens, in statements to the police and while testifying,
alternately  claimed  that  he  ran  over  the  motorcycle  when  (1)  his  foot  slipped  from  the brake,
and (2) his gear-shift indicator was not functioning properly, causing him to move forward over the
motorcycle when he thought he was in reverse. It is the jury's job to judge the credibility of the
witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the
testimony, accepting or rejecting such portions thereof as it sees fit. Banks v. State, 510 S.W.2d 592,
595 (Tex. Crim. App. 1974).
            Certainly, the State referenced Giddens' prior acts on Hargrove's property in closing
argument. The State referred to "numerous occasions" of Giddens running over Hargrove's property.
This reference was in the context of gleaning Giddens' intent to damage the motorcycle. Likewise,
when the State said that Giddens "kept running over Steve Hargrove's property" and that he
"terrorized his neighbor before, running over his stuff," such comments were made to infer Giddens'
intent on May 22, 2004, and to debunk his defense of accident.
            Egregious harm consists of errors affecting the very basis of the case, depriving the defendant
of a valuable right, vitally affecting a defensive theory, or making the case for conviction or
punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692 (Tex.
Crim. App. 1991); Hall v. State, 937 S.W.2d 580, 583 (Tex. App.—Texarkana 1996, pet. ref'd). 
This is simply a case where the jury was asked to believe one side or the other on whether the
charged event was an accident. That the jury was not instructed, regarding whether and how it could
consider Giddens' prior encounters with Hargrove's fence and mailbox, did not vitally affect Giddens'
defense theory. Giddens testified that the other time he hit the mailbox was also accidental. We
cannot see how Giddens was deprived of a valuable right, or that the case for a conviction was made
clearly or significantly more persuasive because of a lack of instruction from the trial court. Giddens
admitted disconnecting a fence that Hargrove erected and tied into the fence on Giddens' daughter's
land, and leaving a note telling Hargrove that Giddens would do the same again, should Hargrove
attempt to rebuild the fence. Giddens, likewise, admitted accidentally backing over the mailbox on
one prior occasion. There being no contest that Giddens disconnected the fence or previously hit the
mailbox, the failure of the trial court to include the referenced instruction in the charge did not
deprive Giddens of a fair trial or undermine his defense. We overrule this point of error.
(2)       The Record Does Not Support a Finding that Giddens' Trial Counsel Was Ineffective
            Giddens complains, in his second point of error, that his trial attorney was constitutionally
ineffective for failing to request the jury instruction discussed above. We overrule this point of error.
            Ineffective assistance of counsel claims are evaluated under a two-part test, which requires
a showing of both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S.
668 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).
A Strickland claim must be "firmly founded in the record" and "the record must
affirmatively demonstrate" the meritorious nature of the claim. Direct appeal is
usually an inadequate vehicle for raising such a claim because the record is generally
undeveloped. This is true with regard to the question of deficient performance—in
which counsel's conduct is reviewed with great deference, without the distorting
effects of hindsight—where counsel's reasons for failing to do something do not
appear in the record. We have said that "trial counsel should ordinarily be afforded
an opportunity to explain his actions before being denounced as ineffective." Absent
such an opportunity, an appellate court should not find deficient performance unless
the challenged conduct was "so outrageous that no competent attorney would have
engaged in it."
Goodspeed v. State, No. PD-1882-03, 2005 Tex. Crim. App. LEXIS 520, at 4–5 (Tex. Crim. App.
Apr. 6, 2005) (citations omitted). When ineffective assistance is raised on direct appeal, appellate
counsel and the court must proceed on a trial record not developed with an eye on litigating or
preserving the claim—thus, a record which is often incomplete or inadequate for this purpose. 
Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). Some claims may be disposed of
on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." Massaro v.
United States, 538 U.S. 500, 508 (2003); Freeman, 125 S.W.3d at 506.
            There is simply nothing in the record before us from which we can properly question the
strategy of Giddens' trial counsel. After reviewing the entire record, we conclude trial counsel
provided an active and spirited defense. As we have stated earlier, Giddens did not deny damaging
the motorcycle. His defense of accident was simply not believed by the jury. We do not find that
trial counsel's conduct was so outrageous that no competent attorney would have done the same. 
Accordingly, we overrule this point of error.
            We affirm the judgment of the trial court.

 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          January 31, 2006
Date Decided:             March 15, 2006

Do Not Publish