NO. 07-04-0418-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 20, 2004



______________________________




IN RE FRANK DWIGHT CARTER, RELATOR



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 By this original proceeding, relator Frank Dwight Carter, proceeding pro se and in
forma pauperis, seeks a writ of mandamus to compel the Honorable Mackey K. Hancock,
Judge of the 99th District Court of Lubbock County, to dismiss his aggravated robbery
charge and find that his conviction is void. Under applicable principles of law, mandamus
relief is denied.

 According to the documents filed by relator, he was indicted for aggravated robbery
in 1989. That same year, the State filed a motion to dismiss the indictment in cause
number 89-409,601, indicating that on July 7, 1989, relator had been re-indicted in cause
number 89-409,752. Pursuant to the State's request, on July 12, 1989, the trial court
signed an order dismissing cause number 89,409,601. See Tex. Code Crim. Proc. Ann.
art. 32.02 (Vernon 1989) (providing that the State may dismiss a criminal prosecution at
any time with permission of the trial court). A certified copy of the motion to dismiss and
the trial court's dismissal order are included with relator's documents. See Tex. R. App.
P. 52.3(j)(1)(A). Appellant was convicted of aggravated robbery pursuant to a subsequent
indictment, and on June 12, 1990, was sentenced to confinement for life. Per relator's
statements, this Court affirmed the conviction on May 1, 1992. 

 Mandamus is an extraordinary remedy available only in limited circumstances
involving manifest and urgent necessity and not for grievances that may be addressed by
other remedies. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). Relator is entitled
to mandamus relief if he establishes (1) the act sought to be compelled is purely ministerial
and (2) he has no other adequate legal remedy. State ex rel. Rosenthal v. Poe, 98 S.W.3d
194, 198 (Tex.Cr.App. 2003). The ministerial act requirement is satisfied if relator
establishes a "clear right to the relief sought" with nothing left to the exercise of discretion
or judgment. Id.

 Relator argues that the trial court was without jurisdiction over the re-indicted
offense and that his conviction is void as a matter of law. By his prayer for relief he
requests that Judge Hancock be directed to comply with the dismissal order entered in the
first indicted offense in cause number 89-409,601. 

 It is well settled that dismissal of an indictment does not prevent the grand jury from
returning a subsequent indictment charging the same offense. Ex parte Williams, 379
S.W.2d 911, 912 (Tex.Cr.App. 1964); see also Hughes v. State, 16 S.W.3d 429, 431
(Tex.App.-Waco 2000, no pet.). Furthermore, when the dismissal order does not indicate
that the case was dismissed "with prejudice," it does not operate as a bar to a subsequent
indictment and prosecution. Hughes, 16 S.W.3d at 431. The certified copy of the
dismissal order provided by relator does not recite that it was dismissed "with prejudice." 

 The copy of the order included with relator's petition establishes that the trial court
dismissed the first indictment. Also, by his own words, relator acknowledges that he filed
a direct appeal of his conviction based on the subsequent indictment, which was affirmed. 
Thus, relator has not demonstrated any entitlement to mandamus relief. 

 Accordingly, the petition for writ of mandamus is denied.

 Don H. Reavis

 Justice



ing evidence of a course of
conduct endangering H.R.S.' well-being.

 That H.R.S. was not present when the arson occurred matters not for several
reasons. First, James was unable to say that had she been within the home he would
have acted differently. Not knowing whether her presence would have affected his
conduct hardly suggests that she was somehow insulated from it. Second, one need not
prove that the misconduct creating the danger was directed at the child or that the child
actually suffered injury to succeed in terminating parental rights. Texas Dep't of Human
Serv. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). It is enough that the evidence illustrated
a course of conduct endangering the physical or emotional well-being of the child. Id. 
And, committing several acts of arson knowing that the homes were occupied at the time
by neighbors and one's own stepchild has such an effect. 

 2. Best Interests

 As to the best interests of H.R.S., we again refer to the evidence of arson, James'
apparent disregard for the life of those in the houses, and his inability to suggest that
H.R.S.' presence would have affected his conduct in any way. To this we had evidence
of James' historic inability or failure to financially support the child as ordered by the court, 


his failure to regularly visit the girl (who resided in San Antonio at the time of trial), his 

failure to maintain medical insurance covering the child, and H.R.S.' stability at her current
home. Combined, that evidence provides ample basis upon which a trial court could have
found, clearly and convincingly, that termination of the parent / child relationship was in
the best interests of H.R.S. See Holley v. Adams, 544 S.W.2d 367, 372 (Tex.
1976)(holding as informative when assessing the child's best interest such factors as the
emotional and physical needs of the child now and in the future, the parental abilities of
the individuals seeking custody, the plans for the child by those seeking custody, the
stability of the home environment both past, present and future, the acts or omissions of
the parent, and any excuse for the acts or omissions of the parent).

 Conclusion

 Thus, in perusing the record only for evidence supporting the trial court's decision,
we find ample evidence. And, when that evidence is compared to the remaining portions
of the record, we cannot say that the decision to end the parent / child relationship was
wrong. So, we reject the contentions regarding the legal and factual sufficiency of the
evidence. (1) 

Issue Four -- Modification of Possessory Conservator

 Next, Orville contends that the trial court abused its discretion in nullifying his status
as a possessory conservator. This is allegedly so because the evidence fails to support
the finding that continuation of the appointment would endanger the physical or emotional
welfare of the child. (2) We overrule the issue.

 Standard of Review

 One's status as possessory conservator can be altered for various reasons. They
include, among other things, a material and substantial change in circumstances of the
child or conservator since initial appointment or 2) the existence of circumstances which
render the conservatorship unworkable or inappropriate. Tex. Fam. Code Ann.
§156.301(1) & (2). Furthermore, the decision to so alter that status is reviewed under the
standard of abused discretion. In re Chandler, 914 S.W.2d 252, 253 (Tex. App.--Amarillo
1996, no writ). And, whether discretion is abused depends upon whether the court acted
without reference to any guiding rules and principles. Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990). So, as long as the decision enjoys support in law and fact, it cannot
be considered an abuse of discretion. Finally, because the standard is one of abused
discretion, our review is not limited to determining whether the reasons proffered by the
court to justify its decision were accurate. Rather, we may affirm the decision if other
grounds illustrate it to be correct. Buls v. Fuselier, 55 S.W.3d 204, 208 (Tex.
App.-Texarkana 2001, no pet.). 

 Application

 Appearing of record is evidence that since the rendition of the initial possession
order 1) William Corder (Orville's stepson with whom Orville regularly visits) confessed to
murdering H.R.S.'s mother, 2) Orville's wife, Kathy, committed and admitted to shoplifting,
3) Orville and Kathy either underwent or are undergoing psychological treatment, 4) Orville
and Kathy were prescribed medication to alleviate mental or emotional problems, and 5)
the parental rights of James have been terminated. So too did the trial court hear and
receive evidence indicating that during the exercise of Orville's visitation, H.R.S. 1)
appeared frightened when she saw him, 2) was reluctant to start visiting with him, 3)
seemed confused, and 4) cried after the visits. Finally, testimony imparted by Kathy could
lead one to reasonably infer that she and Orville desired custody to enhance James'
opportunity to see H.R.S. These are indicia upon which the trial court could have
concluded that the termination of Orville's status as a possessory conservator was in the
best interests of H.R.S. Thus, the trial court's decision was not an example of abused
discretion. 

 Accordingly, we affirm the Order of Termination.


 Brian Quinn

 Justice 


Do Not Publish.

1. Holding as we do relieves us from having to address issue two, i.e. that the evidence was both
legally and factually insufficient to uphold the finding that James failed to support his daughter. This is so
because either ground, if supported by the evidence, permitted termination. And, having already held that
one did, we need not consider the other. 
2. In its findings of fact and conclusions of law, the trial court stated that the "appointment" of Orville
as possessory conservator would not be in the best interests of the child. He had already been appointed
and held that status at time of trial. Thus, reference to his "appointment" was inaccurate. Nevertheless, we
view the error to be nothing more than typographical in nature given that Orville was a possessory
conservator and the state sought the termination of that custodial status.