NO. 07-00-0367-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 26, 2002


______________________________



In re H. R. S., a Child _________________________________



FROM THE COUNTY COURT AT LAW NO. 2 OF POTTER COUNTY;



NO. 55,100-2; HON. DELWIN McGEE, PRESIDING


_______________________________



Before Boyd, C.J., Quinn, and Johnson, JJ.

 Appellants James Edward Swanson (James) and Orville James Swanson (Orville)
appeal from an order entitled "Order of Termination." Therein, the trial court terminated
the parent / child relationship between James and H.R.S. and the possessory
conservatorship of Orville over the same child. The four issues presented to us concern
the legal and factual sufficiency of the evidence underlying the decisions. We affirm. 

Issues One and Three -- Engaged in Conduct Endangering and 


the Best Interests of the Child



 The trial court found, among other things, that James "engaged in conduct . . .
which endanger[ed] the physical or emotional well-being of" H.R.S. and "failed to support
the child in accordance with the parent's ability during a period of one year ending within
six months of the date of the filing of the petition." So too did it conclude that terminating
the parent / child relationship between James and H.R.S. would be in the best interests
of the child. For these reasons, the relationship was terminated. James contends that
none of the aforementioned findings enjoyed sufficient evidentiary basis. We disagree.

 Standard of Review

 The applicable standards of review were discussed in In re M.D.S., 1 S.W.3d 190
(Tex. App.--Amarillo 1999, no pet.) and In re R.D.S., 902 S.W.2d 714 (Tex. App.--Amarillo
1995, no writ). We refer the litigants to them for an explanation of those standards.

 Application of Standard

 1. Endangerment

 A trial court may terminate the parent / child relationship upon receipt of evidence
which clearly and convincingly illustrates that the parent "engaged in conduct . . . which
endangers the physical or emotional well-being of the child" and that termination furthers
the best interests of the child. Tex. Fam. Code Ann. §161.001(1)(E) & (2) (Vernon Supp.
2002). Proof of the commission of violent or negligent conduct directed at another parent
or another child, even though not committed in the child's presence, demonstrates such
conduct. In re B.R., 950 S.W.2d 113, 119-20 (Tex. App.--El Paso 1997, no writ) (wherein
the father murdered the mother). 

 Here, the trial court had before it evidence that: 1) James was on probation for
burglary when he committed several acts of arson, to which acts he admitted; 2) the acts
consisted of setting fire to his house and that of his neighbor on separate occasions; 3) at
the time the acts were committed, he knew that one or more occupants of the house were
present therein; 4) the person occupying his house at the time was his stepdaughter; 5)
he realized he could have killed his stepdaughter; 6) he did not know why he set the fires;
7) 



he has not received counseling with regard to his acts of arson; and, 8) he could not say
that had H.R.S. been in the house at the time he contemplated the arson he would have
acted differently. Intentionally setting fire to several homes while 1) knowing that one
holds your stepdaughter and the other your neighbors, 2) not knowing why you did so, and
3) failing to seek counseling thereafter, is clear and convincing evidence of a course of
conduct endangering H.R.S.' well-being.

 That H.R.S. was not present when the arson occurred matters not for several
reasons. First, James was unable to say that had she been within the home he would
have acted differently. Not knowing whether her presence would have affected his
conduct hardly suggests that she was somehow insulated from it. Second, one need not
prove that the misconduct creating the danger was directed at the child or that the child
actually suffered injury to succeed in terminating parental rights. Texas Dep't of Human
Serv. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). It is enough that the evidence illustrated
a course of conduct endangering the physical or emotional well-being of the child. Id. 
And, committing several acts of arson knowing that the homes were occupied at the time
by neighbors and one's own stepchild has such an effect. 

 2. Best Interests

 As to the best interests of H.R.S., we again refer to the evidence of arson, James'
apparent disregard for the life of those in the houses, and his inability to suggest that
H.R.S.' presence would have affected his conduct in any way. To this we had evidence
of James' historic inability or failure to financially support the child as ordered by the court, 


his failure to regularly visit the girl (who resided in San Antonio at the time of trial), his 

failure to maintain medical insurance covering the child, and H.R.S.' stability at her current
home. Combined, that evidence provides ample basis upon which a trial court could have
found, clearly and convincingly, that termination of the parent / child relationship was in
the best interests of H.R.S. See Holley v. Adams, 544 S.W.2d 367, 372 (Tex.
1976)(holding as informative when assessing the child's best interest such factors as the
emotional and physical needs of the child now and in the future, the parental abilities of
the individuals seeking custody, the plans for the child by those seeking custody, the
stability of the home environment both past, present and future, the acts or omissions of
the parent, and any excuse for the acts or omissions of the parent).

 Conclusion

 Thus, in perusing the record only for evidence supporting the trial court's decision,
we find ample evidence. And, when that evidence is compared to the remaining portions
of the record, we cannot say that the decision to end the parent / child relationship was
wrong. So, we reject the contentions regarding the legal and factual sufficiency of the
evidence. (1) 

Issue Four -- Modification of Possessory Conservator

 Next, Orville contends that the trial court abused its discretion in nullifying his status
as a possessory conservator. This is allegedly so because the evidence fails to support
the finding that continuation of the appointment would endanger the physical or emotional
welfare of the child. (2) We overrule the issue.

 Standard of Review

 One's status as possessory conservator can be altered for various reasons. They
include, among other things, a material and substantial change in circumstances of the
child or conservator since initial appointment or 2) the existence of circumstances which
render the conservatorship unworkable or inappropriate. Tex. Fam. Code Ann.
§156.301(1) & (2). Furthermore, the decision to so alter that status is reviewed under the
standard of abused discretion. In re Chandler, 914 S.W.2d 252, 253 (Tex. App.--Amarillo
1996, no writ). And, whether discretion is abused depends upon whether the court acted
without reference to any guiding rules and principles. Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990). So, as long as the decision enjoys support in law and fact, it cannot
be considered an abuse of discretion. Finally, because the standard is one of abused
discretion, our review is not limited to determining whether the reasons proffered by the
court to justify its decision were accurate. Rather, we may affirm the decision if other
grounds illustrate it to be correct. Buls v. Fuselier, 55 S.W.3d 204, 208 (Tex.
App.-Texarkana 2001, no pet.). 

 Application

 Appearing of record is evidence that since the rendition of the initial possession
order 1) William Corder (Orville's stepson with whom Orville regularly visits) confessed to
murdering H.R.S.'s mother, 2) Orville's wife, Kathy, committed and admitted to shoplifting,
3) Orville and Kathy either underwent or are undergoing psychological treatment, 4) Orville
and Kathy were prescribed medication to alleviate mental or emotional problems, and 5)
the parental rights of James have been terminated. So too did the trial court hear and
receive evidence indicating that during the exercise of Orville's visitation, H.R.S. 1)
appeared frightened when she saw him, 2) was reluctant to start visiting with him, 3)
seemed confused, and 4) cried after the visits. Finally, testimony imparted by Kathy could
lead one to reasonably infer that she and Orville desired custody to enhance James'
opportunity to see H.R.S. These are indicia upon which the trial court could have
concluded that the termination of Orville's status as a possessory conservator was in the
best interests of H.R.S. Thus, the trial court's decision was not an example of abused
discretion. 

 Accordingly, we affirm the Order of Termination.


 Brian Quinn

 Justice 


Do Not Publish.

1. Holding as we do relieves us from having to address issue two, i.e. that the evidence was both
legally and factually insufficient to uphold the finding that James failed to support his daughter. This is so
because either ground, if supported by the evidence, permitted termination. And, having already held that
one did, we need not consider the other. 
2. In its findings of fact and conclusions of law, the trial court stated that the "appointment" of Orville
as possessory conservator would not be in the best interests of the child. He had already been appointed
and held that status at time of trial. Thus, reference to his "appointment" was inaccurate. Nevertheless, we
view the error to be nothing more than typographical in nature given that Orville was a possessory
conservator and the state sought the termination of that custodial status. 


Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00387-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



FEBRUARY
28, 2011

 



 

W. J. COLLIER, APPELLANT

 

v.

 

ROBERT EDWARD HALL TRUST

AND KATHY JEAN HALL TRUST, APPELLEES 



 



 

 FROM THE 39TH DISTRICT COURT OF KENT
COUNTY;

 

NO. 1645; HONORABLE SHANE HADAWAY, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, W. J. Collier (Collier),
appeals from the trial courts judgment in favor of appellees,
Robert Edward Hall Trust and Kathy Jean Hall Trust (appellees).  Collier challenges the legal and factual
sufficiency of the evidence to support the jurys answers to the controlling
jury questions and the trial courts calculation of prejudgment interest.  We affirm in part and reverse and remand in
part.

 

 

Factual and Procedural Background

            In
2002, the controlling stockholders in the Kent County State Bank, Bob Hamilton
and Robert G. Hall, entered into an arrangement to sell their stock to Tom
Darden, Jesse Reese, and Collier.  The agreement
to purchase the stock of Robert G. Hall was eventually culminated by the
payment of cash and the signing of a promissory note by the three named
individuals in favor of Robert G. Hall.[1]  The original amount of the note to Hall was
$94,145.00.  No principal payments were
ever made on this original note.

            Robert
G. Hall died and the note became part of his estate.  Subsequently, Robert Edward Hall (Hall), the
son of Robert G. Hall, entered into an agreement for the execution of a new
note in favor of the Robert Edward Hall Trust and the Kathy Jean Hall
Trust.  In addition, there appears to
have been an agreement whereby some of the interest due on the original note
was paid before the new note was executed. 
On June 15, 2005, a new note was executed by Collier and Reese.  A signature line for Darden appears on the
new note; however, Darden never signed the note.  In fact, the issue of the lack of Dardens
signature became the focal point of the subsequent litigation.  The new note called for payment of quarterly
installments, with the first installment being due on October 10, 2005.   Subsequent to the signing of the new note,
Reese filed bankruptcy.  Hall sent a
notice reminding Collier of the upcoming quarterly payment on September 14,
2005.  No payments of principal or
interest were ever made on the note. 
Suit was subsequently filed to collect the principal of the note,
interest, and reasonable attorney fees.  

            During
the trial, the evidence surrounding the execution of the note was hotly
contested, as was the factual issue of who was responsible for preparation of
the note.  At the conclusion of the
testimony, the jury was asked if the signature of Darden was a condition
precedent to the formation of the agreement of the parties.  The jury answered No.  In the next question, the jury found that
Collier failed to comply with the notes terms. 
The final questions dealt with the amount of damages and reasonable and
necessary attorney fees for trial of the case. 
After receiving the jurys answers to the questions, the trial court
entered a judgment in favor of appellees for
$94,145.00, plus pre-judgment interest in the sum of $54,713.60, reasonable and
necessary attorney fees of $16,664.00, and post-judgment interest on the total
of $166,522.60.  Collier perfected his
appeal and contends that the evidence is both legally and factually
insufficient to support the jurys answers to the questions asked.  Further, Collier contends that, because there
was a lack of proper notice of acceleration of the notes payment terms, the
trial courts calculation of pre-judgment interest is in error.  We will affirm in part and reverse and remand
in part.

Sufficiency of the Evidence

Standards of Review

            Before
beginning our standards of review for the challenges to the sufficiency of the
evidence that Collier has propounded, we should point out that the issue of
whether or not the signature of Tom Darden was a condition precedent to the
formation of the agreement between the parties was pleaded as an affirmative
defense by Collier.  See Tex. R. Civ. P. 94.  Therefore, this issue is one that Collier
bore the responsibility of proving.  See
Compass Bank v. MFP Fin. Servs., 152 S.W.3d
844, 851 (Tex.App.Dallas 2005, pet. denied).

            Legal
Sufficiency

            According
to City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005), No
evidence points must, and may only, be sustained when the record discloses one
of the following situations: (a) a complete absence of evidence of a vital
fact; (b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (c) the evidence offered to
prove a vital fact is no more than a mere scintilla; [or] (d) the evidence
establishes conclusively the opposite of the vital fact.  When reviewing an attack on the legal
sufficiency on an issue that the appellant has the burden of proof, we review
the evidence supporting the jurys finding to determine whether all facts are
established for the contrary position as a matter of law.   Dow Chem. Co. v. Francis, 46 S.W.3d
237, 241 (Tex. 2001) (citing Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989)).  Our review
consists of our viewing the evidence in the light most favorable to the
verdict, crediting favorable evidence if reasonable jurors could, and
disregarding all contrary evidence unless reasonable jurors could not.  City of Keller, 168
S.W.3d at 820.  Finally, we may
not substitute our judgment for that of the trier of
fact as long as the evidence would allow reasonable and fair-minded people to
differ in their conclusions.  Id. at 822. 
This is but another way of saying that as long as there is at least a
scintilla of evidence to support the jurys answer to the fact question at
issue; the legal sufficiency challenge must fail.  Tarrant Regl Water Dist. v. Gragg,
151 S.W.3d 546, 552 (Tex. 2004).  

            Factual
Sufficiency

            In
a factual sufficiency review, we consider all of the evidence both supporting
and contrary to the jurys answer to the fact question at issue.  Plas-Tex, Inc. v U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989).  Because the jury question
involved in our analysis was one that Collier bore the burden of proof, we will
only reverse if we find that the jurys answer is against the great weight and
preponderance of the evidence.  Dow
Chem. Co., 46 S.W.3d at 242.  In order to reverse on a factual sufficiency
point, we will have to be convinced that the jurys answer to the question at
issue was clearly wrong and manifestly unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

Evidence

            Colliers
contention is that Dardens signature was a condition precedent to the
formation of any agreement represented by the note of June 15, 2005.  The evidence before the jury regarding the
events when the note was signed consisted of the testimony of Hall, Hamilton,
and Collier.  Hall testified that the
note signed on June 15, 2005, was furnished by Collier.  He did not know who prepared the note but
affirmatively testified that he did not prepare it and that Collier brought the
note to him.  Further, Hall testified
that it was never a condition for payment of the note that he obtain Dardens
signature on the note.  In fact, during
direct examination, Hall raised the question of why he would trade a good note,
meaning the old note, for one that was conditioned as suggested by
Collier.  Hamilton, one of the original
stockholders, also executed a new note in 2005 that contained the same terms as
the note at issue.  Hamilton testified
that, when he signed the 2005 note, Collier brought the note to the
meeting.  Further, Hamilton testified
that there was no discussion with Collier that Darden was required to sign the
new note before it became enforceable. 
When Collier testified about the drafting of the note at issue and
whether he or Hall furnished the note, the following testimony was heard:

Q.        Do you remember if either you drafted it or somebody drafted it
at your instruction?

A.        I dont remember that, no, sir.

Q.        Okay.  Youre not saying that didnt happen.  Youre just saying you dont remember.

A.        Correct.

Collier also testified that it was his understanding
that Hall would mail the note to Darden in an attempt to obtain Dardens
signature.  Finally, Collier testified
that it was his intent that all three of the original debtors sign the note.

            The
note was presented to the jury and is in the record before this Court.  Upon examination, the following observations
can be made.  First, all three names
appear as makers of the note in the body of the note.  Second, after the naming of the three makers
of the note, there is a parenthetical notation in the plural (Borrowers).  Third, all other references to the borrowers
are by the singular (borrower).  Fourth,
there is a blank signature line for Dardens signature.  Finally, there are no instructions to obtain
the signature of all parties before the note will become enforceable.  Likewise, there are no limitations on the
signature of Reese and Collier regarding the enforceability of the note without
Dardens signature.

            As
the last bit of evidence, each side offered expert testimony from a banker
regarding the status of the note at issue. 
Swenson, the expert for appellees, testified
that, if there were conditions to the issuance of the note, those conditions
should be stated on the note.  Further,
Swenson opined that he did not find any conditions that would operate to
invalidate the note.  Colliers expert,
Crouse, testified that if, in fact, the obtaining of Dardens signature was a
condition placed on the promissory note and the signature was not obtained, the
note would be null and void.  However,
Crouse never affirmatively testified that Dardens signature was a condition
placed on the note. 

Analysis

            Legal
Sufficiency

            Reviewing
the above evidence in the light most favorable to the answer of the jury to the
question, as we must in this review, see City of Keller, 168
S.W.3d at 820, we find that there is more than a scintilla of evidence to
support the jurys answer.  See Tarrant
Regl Water Dist., 151 S.W.3d
at 552.  Colliers position on the
issue is not established as a matter of law. 
See Dow Chem. Co., 46 S.W.3d at 241.  Accordingly, Colliers issue regarding the
legal sufficiency of the evidence to support the jurys answer to question
number one is overruled.

            Factual
Sufficiency

            Remembering
that we are required to view all of the evidence when conducting a factual
sufficiency review, Plas-Tex, Inc., 772
S.W.2d at 445, we must determine whether the jurys answer is so against the
great weight and preponderance of the evidence, Dow Chem. Co., 46 S.W.3d
at 242, so as to make the jurys answer to question number one manifestly wrong
and unjust.  See Cain, 709 S.W.2d at 176.  

            Our
review of the evidence leads us to conclude that the jury was faced with
competing evidence at almost every turn. 
Hall and Hamilton testified that Collier furnished the note in
question.  Collier testified that he did
not personally prepare the note; however, as to whether he might have furnished
the note, Colliers testimony was more equivocal.  He said he did not remember.  As to the issue of conversations about
Dardens signature being required as a condition for the creation of the note,
Hall and Hamilton testified that there was no such discussion.  Further, each testified that there was no
discussion of their needing to obtain Dardens signature on the note.  Collier, on the other hand, testified it was
his understanding that Hall and Hamilton would obtain Dardens
signature.  Appellees
expert said that if there was a condition to the validity of the note, the same
should be evidenced on the face of the note and that he found none.  Interestingly, Colliers expert testified
that, if, in fact, obtaining Dardens signature was a condition of the note,
then a note without the signature would be a nullity.  Clearly, the jury could have accepted the
testimony of both experts and still validly answered question number one, No.  This is so because the answer given by
Colliers expert simply identifies the effect that a condition on the note
would have, but nowhere does he testify that there was a condition on the note
in question.  The note was introduced
and, from our view, does not seem to contain any specific condition or
limitation regarding the execution and validity of the note.  Finally, it is up to the jury to resolve
conflicts in the testimony and determine the weight and value to assign to the
testimony they hear.  See Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). 
Accordingly, we find that there was factually sufficient evidence to
support the jurys answer to question number one and, accordingly, we overrule
Colliers factual sufficiency issue.

Prejudgment Interest

            Colliers
last issue contends that the trial court abused its discretion by its incorrect
calculation of prejudgment interest.  The
substance of Colliers issue is that there was no valid acceleration of the
installments not yet due on the note in question.

Standard of Review

            An
appellate court reviews a trial courts award of prejudgment interest under an
abuse of discretion standard of review.  See
Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.,
139 S.W.3d 342, 348 (Tex.App.Fort Worth 2004, pet.
denied).  A trial court abuses its
discretion when it acts without reference to any guiding rules or
principles.  See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985).  

Law

            Prejudgment
interest is the compensation allowed by law as additional damages for lost use
of the money due as damages during the lapse of time between accrual of the
claim and the date of judgment.  See
Brainard v. Trinity Universal Ins. Co.,
216 S.W.3d 809, 812 (Tex. 2006).  Accrual, as used in our factual situation,
would mean that the interest did not run on the unpaid installments until
acceleration occurred.  See Varner
v. Cardenas, 218 S.W.3d 68, 70 (Tex. 2007) (holding that, since the note in
question did not waive notices regarding acceleration, interest ran on the
unpaid installments only after acceleration occurred.)  

Analysis

            The
trial record reflects that no notice of acceleration was sent by appellees to Collier until June 29, 2006.  This notice was sent by a law firm employed
by Hall.  Subsequently, on October 5,
2006, the Robert Edward Hall Trust sent a demand letter that was styled Final
Demand Before Suit. 
In this demand letter, the trust demands the payment of the full
principal balance plus accrued interest through the day of the letter or suit
will be filed.

            Appellees contend that the notice of payment due, sent by Hall on September 14, 2005, constituted notice
of default and acceleration.  However,
this contention is not supported by the letter in question.  All the letter of September 14, 2005, does is
remind Collier that a payment was due on October 10, 2005.  Since the letter was sent out before the
payment was due, it could not have been a notice of default, intent to
accelerate, or notice of actual acceleration because the event of default,
installment being due, had not even occurred.

            Next,
appellees contend that the note in question provides
for automatic waiver of notice of acceleration in the event of default.  Thus, according to appellees
analysis, the trial court did not act without reference to guiding rules or
principles and, accordingly, did not abuse its discretion.   Downer, 701 S.W.2d
at 241-42.  The problem with appellees analysis of the notes language regarding waiver
is that it is, by its own terms, conditional. 
The note clearly states that, in the event of default in the payment of
principal and interest after demand is
made, the unpaid balance shall, at the option of the holder, become
immediately due.  As reflected in the
discussion in the preceding paragraph, the record reflects that demand was not
made until, at the earliest, the letter of June 29, 2006.  Accordingly, appellees
contention that acceleration was automatic and notice was waived is not
correct.    

Appellees also contend that Collier is precluded from asserting the
affirmative defense of lack of notice of acceleration because it was not
affirmatively pled pursuant to rule 94 of the Texas Rules of Civil
Procedure.  See Tex. R. Civ. P. 94.  To support this proposition, appellees cite the Court to Espinoza v. Victoria Bank
& Trust Co., 572 S.W.2d 816 (Tex.App.Corpus
Christi 1978, writ refd n.r.e.).  However, this Court has held, in Cardenas
v. Varner, 182 S.W.3d 380, 385 (Tex.App.Amarillo
2005), modified on other grounds, 218 S.W.3d 68 (Tex. 2007), that, to
lawfully accelerate a promissory note, the creditor must afford the debtor
notice of its intent to accelerate and actual acceleration.  This holding was based upon the Texas Supreme
Courts holding in Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d
562, 566-67 (Tex. 2001).  Our analysis
indicates that Cardenas is a proper statement of the law on this
issue.  This is so because, when the
holder of a promissory note has the option to accelerate maturity of the note
upon default by the maker, equity demands notice be
given of the intent to exercise that option. 
See Ogden v. Gibraltar Savs. Assn, 640
S.W.2d 232, 233 (Tex. 1982).  For
these reasons, we decline to follow the Espinoza case, as proffered by appellees.  

We find
that the trial courts award of prejudgment interest is an abuse of
discretion.  Accordingly, we sustain
Colliers issue regarding prejudgment interest.

Conclusion

We
affirm the judgment of the trial court as to the underlying note and reverse
the trial courts determination of prejudgment interest.  The case is remanded to the trial court to
properly calculate prejudgment interest in conformity with this opinion.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 











[1] Darden, Reese, and Collier also paid cash and signed
a note in favor of Bob Hamilton for Hamiltons stock.  That note and its successor note are not
involved in this litigation.